## TOMB'S APPEAL.

Where a feigned issue is directed between two judgment-creditors to determine whether one is fraudulent, creditors not parties on the record cannot take advantage of the verdict.

Where the first judgment-creditor succeeds on a feigned issue, directed with the second to determine the validity of his judgment; but on the trial of an issue directed with the third judgment-creditor, the first is found to be fraudulent: he is, nevertheless, entitled to so much of the proceeds of a sheriff's sale as between the second and third judgment-creditor would have gone to the second, for his judgment being valid against the second, he is entitled to use the priority of the second over subsequent judgment-creditors.

APPEAL from the Orphans' Court of Lycoming.

*July* 25. The questions in this case arose on the distribution of the proceeds of a sheriff's sale of the real estate of J. A. Shultze.

F

The material facts were as follows :—There were several judgments against J. A. Shultze, among which were three in the following order of priority : A. E. Shultze, Campbell and Tomb, and Lawshe. A feigned issue was directed by the court between Borrows et al. and A. E. Shultze, to try whether Shultze's judgment was fraudulent as to creditors. To this issue Campbell and Tomb were parties, and the verdict was for Shultze. Another issue was directed on the same question between Lawshe and Shultze, and the verdict in this case was for Lawshe.

On the hearing of the application for distribution, the counsel of Borrows, Tomb, and Campbell, offered to show that they were privies to the feigned issue between Lawshe and Shultze, and that they had assisted at the trial, called witnesses, and paid part of the expenses of the proceeding ; but the evidence was rejected.

ANTHONY, P. J.—"According to the evidence exhibited to the court, it appears that there remains for distribution the sum of $7,957.72, being the amount which was claimed by Augustus E. Shultze on his judgment, No. 312, April Term, 1844, and which was directed to remain with the prothonotary till further ordered by the court, as appears by the decree of distribution, February 15, 1845.

"By a decision of the Supreme Court, which will be found in 1 Barr, 251, that court decided that there was error in the distribution of the moneys in court arising from the sale of the real estate of John A. Shultze, because in making that distribution the court below decided that the verdict and judgment, in the feigned issue directed by the court to try the validity of the judgment of Augustus E. Shultze v. John A. Shultze, was conclusive to postpone said judgment as to other judgment-creditors, and to prevent it from receiving any part of the money in court for distribution.

"The judgment given by the Supreme Court we are bound to carry out in good faith, though we may not exactly understand how a judgment may be fraudulent against one judgment-creditor under the statute of Elizabeth, ch. 13, sec. 5, and yet be honest against other judgment-creditors. In the decision of the Supreme Court it is said that 'one person may acquiesce in a transaction known by him to be honest, while another may nevertheless avoid it,' on the ground of fraud. Thus virtually declaring that so far as A. Lawshe's subsequent judgment is concerned, the judgment of Augustus E. Shultze is clearly and utterly void, frustrate, and of none effect, but with regard to other subsequent judgment-creditors, it is a fair, just, and honest transaction.

"Although the Supreme Court have denounced the proceedings of some of the inferior courts, 'in throwing promiscuously before the jury complicated claims to priority, as discreditable to the court which allows it, as to the counsel who resort to it;' and although we are willing to suffer all legitimate chastisement for our errors 'of omission and commission, yet we submit, with respectful deference, whether we ought to be implicated in 'discreditable proceedings' that took place in another Court of Common Pleas: 1 Barr, 254.

"The first question raised in the present distribution is, whether the whole amount of the fund in court shall be distributed; and, on that question, we are of opinion that a sufficient sum· ought to be retained in court to satisfy the judgment of the Jersey Shore and Lewisburg Bridge Company, feigned issue, No. 365, September Term, 1845; original, No. 336, April Term, 1844. Also, the judgment of George Reidenour, No. 383, April Term, 1844; original and feigned issue, No. 366, September Term, 1845. Previous to the act of Assembly of March 26, 1846, these two causes (*inter alia*) were removed to Union county for trial, to determine whether the judgment in favour of Augustus E. Shultze was fraudulent, &c.; and as they are still pending and undetermined before that court, we refuse to distribute so much of the money as is claimed by those two judgments against John A. Shultze. As to the residue, amounting to $5,572.98, we see no objection to its distribution, as the issue between Samuel T. Borrows, George Tomb, F. C. Campbell, George Tomb, assignee of John Stoffer, J. & A. Graffius, Wilson & McClintock, James Taggart, Lewis Dewart, Hickman & Brothers, and William Cameron, plaintiffs, and Augustus E. Shultze, defendant, has been tried, and a final judgment been rendered thereon in favour of the defendant. And as the issue has been tried between Abraham Lawshe and Augustus E. Shultze, and a verdict and judgment has been rendered for the plaintiff, the only question, therefore, is, to whom the $5,572.98 is to be adjudged by the decree of the court.

"It is contended by the counsel of A. E. Shultze, that although the judgment in his favour was fraudulent and void between him and A. Lawshe; yet, as it was adjudged to be valid between him and Samuel T. Borrows and others—some of whose judgments are prior in date to Lawshe's judgment—the consequence is, that the judgment in favour of A. Lawshe is not entitled to a preference over those prior judgments, in the distribution of the money in court.

"To this view of the case we cannot assent; and in making

distribution, we cannot better illustrate our ideas than by considering the controversy among the different claimants in the nature of a personal conflict, wherein A. Lawshe has been victor over A. E. Shultze, and he in turn has vanquished S. T. Borrows, George Tomb, F. C. Campbell, and others.

'In the case of Wilcox v. Waln, 10 S. & R. 380, a controversy arose among the creditors. A judgment-creditor stands No. 1, a mortgage No. 2, and the United States No. 3. By our state laws, the judgment-creditor had the preference over all subsequent lien-creditors; but the act of Congress defeated his preference, because, when the defendant made a general assignment of his property, it had not been seized and taken in execution on that judgment. Between the judgment-creditor and the United States, the latter was entitled to the preference; but the mortgage steps in to the aid of the judgment-creditor, and says to the United States, 'true it is, without my assistance you would defeat his claims; I, however, have a right to the money prior to yours, because the property sold by the sheriff was mortgaged to me to secure a *bonâ fide* debt, before the general assignment. You, therefore, must stand back; you are defeated out of the field, and must let the other combatants fight it out under our own laws.' Thus the judgment-creditor retained his position, and was entitled to the money in court.

"So in the case of the Manufacturers' & Mechanics' Bank v. The Bank of Pennsylvania, 7 W. & S. 335, the Supreme Court decided, that although the lien of the Manufacturers' & Mechanics' Bank was not good as to subsequent creditors; but as the Bank of Pennsylvania's mortgage was an intermediate lien between the Manufacturers' & Mechanics' Bank's mortgage and those creditors, and would be entitled to the money, if the lien of the Manufacturers' & Mechanics' Bank were out of the way; yet, as the Bank of Pennsylvania had notice of the first mortgage, that mortgage retained its place, and the lien of the Bank of Pennsylvania became the 'second piece on the board,' on the ground that, although against the succeeding liens the claim of the Manufacturers' & Mechanics' Bank was bad, yet it was good against the Bank of Pennsylvania, which had actual notice, and whose lien was good against all the rest.

"In the present case before the controversy, A. E. Shultze stood No. 1, Tomb and Campbell No. 2, Lawshe and others, No. 3. There was only a sufficient amount of money to satisfy No. 1, and consequently it must have been awarded, *in toto*, to A. E. Shultze.

But No. 2 attempted to defeat No. 1, and put him behind them. In this, however, they failed, and he retained the first rank, keeping them in his rear. A. Lawshe, one of No. 3, made a similar attempt and vanquished No. 1, and by the judgment of the court the claim of A. E. Shultze was postponed to that of Lawshe as fraudulent and void. This verdict and judgment in favour of Lawshe gave him no more than a single point, and did not benefit or prejudice A. E. Shultze or the other judgment-creditors, beyond that point. The Supreme Court says, in 1 Barr, 'that Lawshe had no right to contest the judgment in favour of A. E. Shultze, for those who had not challenged it, for if he could not bind them by his proceeding, he could not benefit them by it.' If such were not the case, the whole ground would have been lost (instead of a single point) without the other creditors having a hand in it. What position then must Lawshe occupy in the distribution? If he still retains his place among the creditors No. 3, then his victory will be a barren one indeed. He has endeavoured to place himself in front of No. 1, by defeating him, but he is behind No. 2, and prevented from reaping the fruits of his victory over No. 1.

"The counsel for A. E. Shultze says, that he has attained no advantage for himself by postponing No. 1, for the Tomb and Campbell judgments, No. 2, still stand before him, and are good and valid liens, 'prior in tempore potior in jure' than his, and in a contest between them would be entitled to the money, though, as A. E. Shultze has defeated No. 2, he must still retain his position as No. 1, notwithstanding the judgment of No. 3 against him, and consequently take all the money, as he would have done, if no such judgment had been rendered in favour of Lawshe.

"We, however, take a different view of the relative position of the parties. By the decision against No. 2, they are no longer in the field: so far as they are concerned, 'they cannot take the money in court, it is nothing to them into whose hands it goes:' 10 S. & R. 380. In the contest between Borrows, Tomb, Campbell, &c., and Augustus E. Shultze, the former have been defeated; the fund in court Shultze has a better right to than they. It is insufficient to reach them, and they are not to be paid. The other combatants than A. E. Shultze and Lawshe 'must be left to fight it out between them, there is no doubt.' Lawshe has obtained the victory, and is entitled to be first paid out of the money in court. He takes off so much of the amount that would otherwise be coming to A. E. Shultze, and the residue is to be paid to Shultze's judgment.

The court accordingly decree that of the money in court

    there be paid to A. Lawshe,  .    .    .    .    .    $576.37

To A. E. Shultze,  .    .    .    .    .    .    .    4,996.61

                                                $5,572.98

and that the residue, amounting to $2,384.74, be retained in court till final judgment be rendered in the cases of the Jersey Shore and Lewisburg Bridge Company *v.* A. E. Shultze, and George Reidenour *v.* A. E. Shultze, now pending in Union county."

*Scates* and *Miller*, for appellants, cited 5 Barr, 37 ; 3 J. C. R. 553; 13 Ves. 399: 3 Dess. 207; 7 W. & S. 267; 4 Rawle, 273.

*Armstrong* and *Maynard*, contrà, 5 Barr, 242 ; 7 W. & S. 343.

*July* 31. GIBSON, C. J.—This is an attempt to get round a principle established when the cause was here before, and enforced below ; which it is our duty to repress. Persons whose names are not mentioned in the record of the feigned issue between Lawshe and Shultze, or in the application for it, or in the order awarding it, claim to have been substantive parties to it, by reason of their activity on the successful side at the trial of it; which was proposed to be proved by parol evidence. Our jurisprudence would come to a sorry pass indeed, did we receive such proof to patch up a record; and in favour, too, of those who had subsequently become formal parties to another issue to try the same fact and had been defeated. A court will undoubtedly look beyond the record for a beneficial party to fix him with costs, or to exclude him as a witness, or even to bind him by a judgment in ejectment ; but I know not how he can be brought into view for any other purpose, or be allowed to gain an advantage from a verdict against another who was a legal, as well as an actual party. Had these persons been parties to the first issue, the verdict would have concluded them in any subsequent one. We are bound to frustrate every attempt to elude a decision of this court, however unpalatable to those who are bound by it. " The judgment given by the Supreme Court," said the judge who ruled the cause below, " we are bound to carry out in good faith, though we may not exactly understand how a judgment may be fraudulent against one judgment-creditor under the stat. 13 Eliz. c. 5, and yet be honest against other judgment-creditors." Yet it seems not very difficult to comprehend how such a result may be produced where different parties separately contest the same fact in several actions in which

different juries may differently estimate the weight of the evidence. It may be difficult to understand how a will may be a forgery as to one devisee, and good as to another; yet in an ejectment by a devisee against the heir-at-law, the will may be proved to be a forgery, to the satisfaction of the jury, while another devisee may recover on it as a valid instrument: or one tenant in common may fail against a disseisor, while his co-tenant may succeed on the same title. Several examples of the sort may be seen in Buller's Nisi Prius, p. 244. I mean not however to argue the point, but to indicate that a court which submitted to our decision with such undisguised reluctance, would not be apt to carry the principle of it too far; and we accordingly find that the appellants have no case. There is however manifest error in the decree, but only such as would operate to the prejudice of the appellee, in the misapplication of another judgment of this court pronounced in the case of the Manufacturers' and Mechanics' Bank v. The Bank of Pennsylvania, and founded on Wilcocks v. Waln, 10 S. & R. 380. The principle of those cases is, that the last of three, or more, liens in the order of their succession, being superior to the first, but inferior to the second, gains no practical advantage from its priority, because it could not be preferred to the first without being preferred also to the second, to which it is subsequent. Is it not applicable in all its force to the case before us? In the order of date, the judgment of Shultze stands first: the judgments of Tomb and Campbell, second; and the judgment of Lawshe, third. On the trial of a feigned issue, at the instance of Lawshe, the judgment of Shultze was found to be collusive and fraudulent; and, on the trial of another such, at the instance of Tomb and Campbell, it was found to be fair and valid. On this state of the case, the court preferred the judgment of Lawshe, both to the judgment of Shultze and the judgments of Tomb and Campbell; on the principle that, as the latter had attempted, but failed, to prove the judgment of Shultze fraudulent, their own judgments were driven entirely out of the field; and that, as they could not take any part of the money, it was nothing to them into whose hands it might go. In this lies the fallacy. The court seems to have considered the trial of the issue at the instance of Tomb, Campbell, and the other creditors who were parties to it, as a death-struggle in which their judgments were pitted against that of Shultze; and that both could not survive. But so far were the judgments of the complaining creditors from being staked against the judgment of Shultze on the event of the issue, they were not even involved in

it. They continued to stand as they would have stood had there been no issue at all, and were just as much entitled to the residue. Yet notwithstanding this, the judgment of Lawshe was moved up to the head of the list, and paid in full out of the amount of Shultze's judgment, leaving the residue of its claim to be paid to it, and retaining the rest of the fund in court, not for Tomb and Campbell, who alone could be reached by it, but to await the event of issues at the instance of creditors still junior. Thus was the obstacle of intervening judgments put out of the way by treating Tomb and Campbell as judgment-creditors, without part or lot in the matter, whose liens had been annihilated; and by consequently bringing the judgments of Lawshe and Shultze into immediate collision and conflict, though the judgments of Tomb and Campbell were to be next served. Had not that been done, the result could have been obtained only by subrogating the judgment of Lawshe to that of Shultze — a species of subrogation, not only unique, but utterly subversive of the principle of Wilcox v. Waln, and The Manufacturers' and Mechanics' Bank v. The Bank of Pennsylvania. In every aspect, the rule of distribution adopted by the court would do injustice, and the only obstacle to the correction of it is that the injured parties are not the appellants. In an ordinary case, we would not interfere for those who had not thought proper to appeal to us; nor do we now interfere for the sake of Shultze, Tomb, and Campbell. We interfere for the vindication and enforcement of the judgments of this court wherever it is necessary to carry a principle established by them into full effect; and we conceive that it is necessary to do so now. We therefore order and direct that A. E. Shultze have leave to take the amount of his judgment out of court; and that the residue of the fund be applied to the judgments of Tomb and Campbell, without waiting for the trial of the pending issues, as the judgment-creditors to whom they pertain can take nothing in any event. Whether the order awarding them shall be vacated as unnecessary, must depend on the discretion of the court.

So decreed.