## Beck *v.* Germantown Cricket Club.

*Assignments—Unliquidated damages in tort—Equitable plaintiffs— Costs—Appeals—Paper-books—Evidence.*

1. Unliquidated damages in tort are not capable of assignment before verdict.

2. Where the plaintiff in an action of trespass to recover damages for personal injuries assigns a portion of the claim for unliquidated damages before verdict, and thereafter a verdict and judgment in his favor are reversed by the Supreme Court, the court has no power to make the assignees equitable plaintiffs at the instance of the defendant, for the purpose of enabling the defendant to proceed against the assignees for the costs of the suit.

3. In such a case an appeal from an order making absolute a rule to make the assignees equitable plaintiffs will not be quashed because the appellants have failed to print the evidence taken at the trial. The rule applicable to such a case is rule 26, which provides that the evidence shall be printed "if necessary." The evidence taken at the trial was not necessary to determine the question involved in the appeal.

Argued Oct. 20, 1910. Appeal, No. 152, Oct. T., 1910, by Michael J. McEnery et al., from order of C. P. No. 2, Phila. Co., June T., 1906, No. 4,910, discharging rule to strike off appellants' names as equitable plaintiffs in case

of Alexander Beck and Mary Beck, his wife, v. Germantown Cricket Club. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Rule to show cause why the suggestion of appellants' names as equitable plaintiffs and the entry of judgment against them for costs should not be struck off.

The court discharged the rule.

*Error assigned* was order discharging the rule.

*Edmund Randall,* for appellants.—It is clear that the Act of April 23, 1829, P. L. 355, gave the successful defendant in an action of tort no authority to make an assignee of an interest in a prospective verdict for unliquidated damages an equitable plaintiff, and so hold him for costs. Prior to and independently of the act of 1829 it was the practice of our courts to permit a successful defendant in an action of assumpsit to suggest of record the name of the equitable plaintiff and hold him for costs, but that was only in those cases where the person suggested was the real instigator of the action and prosecuted it for the exclusive benefit: Armstrong v. Lancaster, 5 Watts, 68; Canby v. Ridgway, 1 Binney, 496; Utt v. Long, 6 W. & S. 174.

The assignment was a nullity, and afforded no authority for defendant's action: Sensenig v. Penna. R. R. Co., 229 Pa. 168.

*Thomas Stokes* and *Bayard Henry,* for appellee.—The act of 1829 provides that the person at whose instance the action is prosecuted shall be liable for costs. Parties to a litigation, whether as attorneys or physicians, who accept an assignment of a claim, and take part in prosecuting the same, become liable for costs and are estopped from denying the validity of the assignment. They are persons at whose instance the case has been prosecuted: Armstrong v. Lancaster, 5 Watts, 68; Tomb's App.,

9 Pa. 61; Gallagher v. Milligan, 3 Penrose & Watts, 177; Miller v. Lint, 36 Pa. 447; Gambers to use v. Robinson, 1 Pearson, 67.

OPINION BY RICE, P. J., March 3, 1911:

The plaintiffs brought suit in trespass to recover damages for personal injuries to the wife alleged to have been caused by the defendant's negligence. The case was tried three times. The third trial resulted in a verdict followed by a judgment in favor of the wife for $2,250 and in favor of the husband for $100. On appeal the Supreme Court reversed the judgment and entered judgment for the defendant. After the return of the record to the common pleas the defendant filed in that court a paper suggesting the names of these appellants as equitable plaintiffs in the case, which suggestion was accompanied by the affidavit of the secretary of the defendant association to the effect that Mary Beck, by an assignment dated November 15, 1909, assigned all her right, title and interest in the verdict to these persons. The purpose of this suggestion was to prepare the way for issuing execution against them, under sec. 2 of the Act of April 23, 1829, P. L. 355, for the costs amounting to $339.23. Upon their application the court granted a rule to show cause why the suggestion of their names as equitable plaintiffs and the entry of judgment against them for costs should not be struck off, and from the order discharging the rule this appeal was taken.

It appears from the depositions submitted on the hearing of the rule, that the assignment was agreed to, immediately reduced to writing and executed after the jury had retired to deliberate and before they rendered their verdict, and, although absolute in form, was given and accepted merely as collateral security for the attorney fee of $500 theretofore agreed to be paid to one of the assignees for his services in the case, the bill of one of the other assignees, amounting to $100, for medical services, and the sum due Mary O'Hay, the other assignee, for

money advanced and as compensation for taking care of the plaintiff for three years.

The legal question is, whether by taking the assignment under the circumstances stated the assignees became equitable plaintiffs and by that act alone made themselves liable for the costs. The act of 1829 is entitled, "A supplement to the act entitled, 'An act for the assigning of bonds, specialties, and promissory notes.'" The Act of May 28, 1715, 1 Sm. L. 90, to which it is a supplement, relates exclusively to the assignment of "bonds, specialties and notes in writing," and the first section of the act of 1829 relates exclusively to "cases of equitable transfer or assignments of judgments, bonds, specialties and other contracts." The second section, which is supposed to support this proceeding, reads as follows: "That the equitable plaintiff or person for whose use or benefit and at whose instance any action has been or may be prosecuted, whether named on the record or not, shall be liable to execution on judgment, against the legal plaintiff or plaintiffs: provided, that where such equitable plaintiff or plaintiffs were not named on the record previous to judgment, his name shall be suggested on the record, supported by affidavit of his interest in the cause, before execution shall issue." Construing this section in the light of the context and the subject-matter of the entire act, it would be a strained conclusion that would make it apply to assignments before verdict of unliquidated claims for damages in actions ex delicto. The reason for not extending the statute, by construction, to such a case is obvious, when it is remembered that such claims are not assignable before verdict. There are two recent cases directly on the point. In Marsh v. Western New York & Pennsylvania Ry. Co., 204 Pa. 229, it was held that the right of action given by the Act of April 26, 1855, P. L. 309, cannot be assigned by the widow to a child before verdict, so as to enable the action to be brought or maintained in the name of the widow for the use of the child. Justice POTTER, speaking for the court, said: "The

claim is at most, one for unliquidated damages, in an action sounding in tort, and is therefore under the authorities, not capable of assignment before verdict. A case in point is Rice v. Stone, 83 Mass. 566, where it is said that it is a principle of law, 'applicable to all assignments, that they are void, unless the assignor has either actually or potentially the thing which he attempts to assign. A man cannot grant or charge that which he has not.'" In Sensenig v. Penna. R. R. Co., 229 Pa. 168, it is said: "A right of action strictly personal is not assignable and the general doctrine is, both in law and equity, that a right of action for a pure tort is not the subject of assignment: 2 Am. & Eng. Enc. of Law, 1020." It is apparent, therefore, that the assignment gave these parties no rights, legal or equitable. It will be observed that the act requires that the interest of the person whose name is suggested as equitable plaintiff be set forth in the affidavit. It therefore plainly implies that the person must have an interest. But here, as we have seen, the persons whose names were suggested had no interest whatever. An application on their part to have their names entered as equitable plaintiffs would have been refused, if no other interest had been alleged as ground for the application than an assignment before verdict. It would be an anomaly to hold that one who is not an equitable plaintiff, and cannot be named as such on the record upon his own suggestion, may nevertheless be made an equitable plaintiff by the defendant. The assignment being treated as a nullity, as under the decisions it must be, and there being no other ground upon which the appellants could be declared to be equitable plaintiffs or persons for whose use or benefit the suit was prosecuted, it follows that the rule to show cause granted at their instance should have been made absolute.

The motion to quash, upon the ground that the evidence taken on the trial of the case is not printed in the appellants' paper-book, cannot be sustained. This is not an appeal from a judgment on a verdict, but from an

order which was made after judgment. The rule applicable to such a case is rule 26, which provides that the evidence shall be printed "if necessary." The evidence given upon the trial of the case was not necessary in the determination of the question whether the interest which the appellants had by virtue of the assignment was such an interest as entitled the defendant to have them named as equitable plaintiffs. The motion is overruled.

The order discharging the rule to show cause why the suggestion of the names of Michael J. McEnry, W. M. Moore and Mary O'Hay as equitable plaintiffs and the entry of judgment against them for costs should not be stricken off, is reversed and the rule is reinstated and made absolute; the costs of this appeal to be paid by the appellee.