## Zook v. Shirk.

*Bernard J. Myers,* of *Zimmerman, Myers & Kready,* for C. A. B. Zook.
*George Ross Eshleman* and *David H. Kinley,* for Stanley M. Brown.

LANDIS, P. J., Jan. 19, 1929.—The facts which arise in the above controversy are not in dispute. The legal question presented is whether C. A. B. Zook or Stanley M. Brown is entitled to receive the proceeds of a sheriff's sale produced by the sale of the right, title and interest of Milton E. Shirk in certain real estate.

It appears that Milton E. Shirk was possessed of considerable real estate. On June 8, 1925, he and his wife conveyed a house and lot of ground, situated

in the village of Stevens, West Cocalico Township, Lancaster County, Pennsylvania, containing 124 perches, to his son, Samuel M. Shirk. This deed was recorded in the recorder's office on Oct. 25, 1926. On Feb. 15, 1926, they conveyed to their son, Mark M. Shirk, a tract or plantation, also situated in said West Cocalico Township, containing 70 acres and 157 perches. On the same day they also conveyed to Jacob W. Fasnacht two small tracts containing, together, 81 perches, situated in said village of Stevens. On the same day they conveyed to their son, Samuel M. Shirk, a messuage or tract of land, also situated in said township, containing 72 acres and 36 perches. These deeds were duly recorded on Feb. 23, 1926. On June 8, 1925, they conveyed to said Samuel M. Shirk a house and lot of ground, situated in the said village of Stevens, which lot contained 124 perches. On April 1, 1926, they conveyed to the same grantee a lot of ground, situated in the said village of Stevens, containing 22 perches. On the same date they conveyed to the same grantee a lot of ground, situated in said village of Stevens, containing 32 perches. On the same date they conveyed to the same grantee four lots of ground, situated on Grant Street, in the Borough of Ephrata, containing 31 2/10 perches. All of these four last-mentioned deeds were recorded on Oct. 25, 1926.

On March 18, 1925, E. H. Martin gave a note to C. A. B. Zook, payable sixty days after date at the Lancaster Trust Company, for the sum of $50,000. This note was endorsed by John B. Graybill, Calvin F. Herr and Milton E. Shirk. Subsequently, Zook received on account the sum of $25,000.

On April 18, 1927, Zook brought suit against Shirk, to May Term, 1927, No. 34, to recover the balance due upon the said note, and on June 6, 1927, judgment was entered in favor of plaintiff and against defendant for the sum of $27,380. On Aug. 11, 1927, a writ of *fieri facias*, to November Term, 1927, No. 4, was issued upon this judgment, and by virtue of the said writ, the sheriff levied upon the above-mentioned real estate, and on inquisition duly had, it was ascertained that the same was not "of a clear yearly value beyond all reprises sufficient within the space of seven years to satisfy the debt and damages in said writ mentioned." On March 30, 1928, a writ of *venditioni exponas* was duly issued, and under it the sheriff sold the right, title and interest of the said Milton E. Shirk in the said real estate to C. A. B. Zook, for the sum of $7000.

On Jan. 17, 1927, the Pennsylvania Soap Company, by E. H. Martin, President, and J. William Brown, Treasurer, made a note "to the order of ourselves," payable thirty days after date at the Lancaster Trust Company, for $3500. This note was endorsed by the Pennsylvania Soap Company, E. H. Martin, President; J. William Brown, Treasurer; E. H. Martin, Milton E. Shirk, Calvin F. Herr and Stanley M. Brown.

On Feb. 15, 1927, the Pennsylvania Soap Company, by E. H. Martin, President, and J. William Brown, Treasurer, made a note, payable thirty days after date, "to the order of ourselves," at the Lancaster Trust Company, for the sum of $2500. This note contained the endorsements of the Pennsylvania Soap Company, E. H. Martin, President; J. William Brown, Treasurer; E. H. Martin, Milton E. Shirk, Calvin F. Herr and Stanley M. Brown.

On May 6, 1927, Stanley M. Brown, being the holder of said two last-mentioned notes, brought suit, to May Term, 1927, No. 73, against the said Milton E. Shirk, and on May 24, 1927, judgment was entered in favor of the plaintiff and against the defendant for want of an affidavit of defense for $6095.25.

It was claimed that the judgment of C. A. B. Zook was on a note for which Milton E. Shirk was liable, given prior to the time when the said Shirk and his wife conveyed the said real estate, and that the said conveyances were

without consideration, and, therefore, fraudulent as to the prior existing creditor. It was admitted that the liability to Brown did not arise until some time after the said conveyances were made, and it was shown, and not denied, that when the conveyances were made Shirk was not only not indebted to Brown, but did not know him; that he did not get the proceeds of the notes signed by the Pennsylvania Soap Company; that the conveyances were not made with the idea that he was afterwards going to give a note to Stanley M. Brown; and that he did not convey his real estate in contemplation of giving anybody any note in the future that would not be good.

The said Stanley M. Brown now claims that, as his judgment was entered prior in time to that of C. A. B. Zook's, he is entitled to the money realized by the sheriff's sale to the extent of his judgment; and C. A. B. Zook claims that, as the real estate was conveyed by Milton E. Shirk in fraud of him as an existing creditor, and the sale was produced by an execution issued by him for a debt which was due before the conveyances were made, the said proceeds should be paid by the sheriff to him on account of his judgment.

Section 4 of the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, provides that "every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration." It, therefore, follows that, if Milton E. Shirk conveyed his real estate to his sons and others without consideration and thereby rendered himself insolvent, such conveyances were void as to Zook, who was then one of his existing creditors, without regard to his intention.

What, then, was the proper procedure in such a case? The 9th section of the Act of 1921 declares that "where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person, except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser: *(a)* have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim; or *(b)* disregard the conveyance and attach or levy execution upon the property conveyed." In this case the creditor chose the latter remedy, and, after obtaining judgment, levied upon the land conveyed in the hands of the respective grantees of the debtor, and, having sold the same at sheriff's sale, purchased the right, title and interest of his debtor therein. He is now in a position to bring his action of ejectment and test the question whether his debtor has, as to him, fraudulently conveyed this real estate. See Stewart *v.* Coder, 11 Pa. 90.

In Appeal of the Girard Bank, 13 W. N. C. 101, which was prior to the passage of the above act, a similar case arose concerning the relief which the debtor could command at the hands of the courts. The Girard National Bank, on Sept. 6, 1878, discounted for the account of Patrick McEntee a note of Patrick Tiernan, endorsed by Patrick McEntee, for $2500. The note was unpaid and duly protested, and judgment was obtained against McEntee on Dec. 3, 1878. On Nov. 19, 1878, McEntee conveyed to his daughter, Emma J. Maguire, certain real estate in the City of Philadelphia. A *fi. fa.* was issued on the said judgment, a levy was made upon the land and it was duly condemned. A bill in equity was then filed against Emma J. Maguire and her husband to prevent their conveying the said real estate to third parties, alleging that the conveyance was void as to the bank. It was held that "where a judgment creditor desires to avoid an alleged fraudulent and voluntary conveyance of land by his debtor, his proper course is to levy on the land, buy in

the same at sheriff's sale, and bring an action of ejectment;" but that "he is not entitled to relief in equity." See Sauber *v.* Nouskajian, 286 Pa. 449. This rule in its full force seems to be somewhat modified by the Act of 1921. Judge Thayer, in an opinion which was affirmed by the Supreme Court, said: "Nor does the plaintiff stand in need of any injunction, for . . . having levied upon and condemned the land, it could not be conveyed or encumbered to his prejudice." See Hyde *v.* Baker, 212 Pa. 224. He also added: "The plaintiff has acquired a lien upon the land by his execution which cannot be displaced." See, also, Brackin *v.* Welton Engineering Co., 283 Pa. 91.

In Handel and Hayden Building and Loan Ass'n *v.* Elleford, 258 Pa. 143, it was held that "where a sale is made to delay, hinder and defraud creditors, the proper manner to test the validity of the transaction is not by *scire facias*, but by a judicial sale at the suit of the judgment creditor; and where the judgment debtor has made a fraudulent transfer of property which otherwise would be subject to the lien of the judgment, and the creditor, for some valid reason, cannot for the time being lawfully proceed to immediate execution and sale, or for any other cause the latter has no full and adequate remedy at law, his remedy is by bill in equity." In American Trust Co. *v.* Kaufman, 287 Pa. 461, the same principle is discussed, but it was not decided what effect, if any, section 9 of the Act of 1921 had as to the remedy in such cases.

It can be considered as established that the debt of Shirk to Stanley M. Brown was not in existence when the conveyances were made by Shirk, nor was Shirk then contemplating the incurring of that indebtedness, nor was he about to engage in a business or transaction for which the property remaining in his hands was unreasonably small. Therefore, if, when Brown obtained his judgment, he had levied upon and sold this real estate, he would have taken nothing. But, nevertheless, as we have said, he contends that if the conveyance was void as to creditors, it was void as to creditors generally, and he, being first in order (having obtained his judgment before that of Zook), was entitled to receive the amount of the same out of the purchase money, though he did nothing and could do nothing to realize the fund.

I know of no case exactly like this determined by the courts of this State and none has been referred to by counsel; but by analogy I think it has been settled. Thus, in Shulze's Appeal, 1 Pa. 251, it was held that "no one can have advantage from a judgment, who would not have been prejudiced by it; and where one lien creditor of a fund in court for distribution, had singly petitioned for an issue to try the alleged fraudulency of a conflicting encumbrance, which was found for him . . . the verdict could not be used by the other encumbrancers who had remained quiescent." In Schick's Appeal, 49 Pa. 380, Woodward, C. J., said: "Ever since Shulze's Appeal, 1 Barr 251, it has been considered that in questions of distribution, those creditors only who unite in asking for an issue to contest an older lien can derive any benefit from a successful contest of such lien." Also, in Schick *v.* Pharo, 49 Pa. 384, it was decided that in a feigned issue to ascertain the validity of a judgment as against creditors, the verdict and decree thereon inure only to the benefit of the contesting creditor. See, also, Tomb's Appeal, 9 Pa. 61. In Fowler's Appeal, 87 Pa. 449, it was said that "the deed in controversy is void only as to the complaining creditors. The quiescent creditors, if there be any, cannot take advantage of this proceeding. . . ." The case of Cram *v.* Cram, 160 N. E. Repr. 337, is not in point. In that case, a bill in equity was filed by a husband against a wife to reach land which he alleged was his, but was in her name and in the possession of others. The rights of creditors were not in question.

326

I am of the opinion that the rule to show cause why the sheriff should not pay over the money in his hands to C. A. B. Zook should be made absolute, and that the rule to show cause why he should not pay over the same to Stanley M. Brown to the extent of his judgment should be discharged, and this is accordingly done.