Neal to Use, Appellant, *v.* B. R. & P. Railway Company.

Argued April 15, 1931.

Before

TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNING-
HAM, BALDRIGE and DREW, JJ.

*Frank K. Willmann,* and with him *Gilbert S. Parnell,*
for appellant.

*Edward Friedman,* and with him *John G. Whitmore,
John A. Scott, Wm. M. Ruddock* and *Charles J. Mar-
giotti,* for appellee.

OPINION BY KELLER, J., July 8, 1931:

On May 21, 1924, J. Clair Neal, an employe of the
Columbus Asphalt Paving Co., was killed, in the course
of his employment, by being crushed between two cars
of the Buffalo, Rochester & Pittsburgh Ry. Co.

A compensation agreement was entered into between
his widow, Veda Neal, and his employer, represented
by Globe Indemnity Co., its insurance carrier, for the
compensation payable to the widow and children under
the Workmen's Compensation Law.

Subsequently the above action for damages was
brought by Veda Neal on behalf of herself and minor
children against the railway company, on the ground
that Neal's death was occasioned by the railway com-
pany's negligence, and a verdict and judgment for

$12,795 obtained. This was reversed by the Supreme Court and judgment entered for the defendant non obstante veredicto. See Neal v. Buffalo, Rochester & Pittsburgh Ry. Co., 289 Pa. 313.

The defendant in this action afterwards, filed a paper, supported by affidavit, under Section 2 of the Act of April 23, 1829, P. L. 355, 10 Sm. L. 455,[1] suggesting that Globe Indemnity Co. was an equitable plaintiff or party for whose use or benefit and at whose instance and request the said action had been prosecuted, and that it should be named on the record as an equitable or use plaintiff, in order that the defendant might have execution against it for the costs of suit; and after a hearing on the rule granted pursuant to such suggestion, and answer thereto, at which witnesses were examined in open court, the court made the rule absolute, and amended the record so as to make Globe Indemnity Co. a use plaintiff and entered judgment against the use plaintiff as well as the legal plaintiff. Globe Indemnity Company appealed.

The record in the case establishes that the appellant consulted with Mrs. Neal as to bringing the action against the railway company and was active in aiding and assisting her in its prosecution. It paid retainers to counsel selected by her, subpoenaed the witnesses, paid their fees and expenses and had a representative present in court who sat at the plaintiff's counsel table. In the course of the hearing on this rule the following admission was made of record: "Respondent now fully and frankly admits its interest in the case of Neal v. Buffalo, Rochester & Pittsburgh Rail-

Note 1. A supplement to the Act (1 Sm. L. 90) entitled "An act for the assignment of bonds, specialties and promissory notes."....
"Sect. 2. That the equitable plaintiff or person for whose use or benefit, and at whose instance any action has been or may be prosecuted, whether named on the record or not, shall be liable to execution on judgment against the legal plaintiff or plaintiffs: Provided, That where such equitable plaintiff or plaintiffs were not named on the record previous to judgment, his name shall be suggested on the record, supported by affidavit of his interest in the cause, before execution shall issue."

way Company, and also doing everything it could to assist Mrs. Neal in getting a recovery." Appellant was pecuniarily interested in the outcome of the action, to the extent that if the judgment against the railway company had been sustained and paid it would have been relieved of further compensation payments as insurance carrier of the employer, and by the terms of its policy would have been subrogated to the rights of recovery vested in the employer, under section 319[2] of the Workmen's Compensation Law, or in the employe or his dependents claiming under said policy, to the extent of the compensation theretofore paid by it.

The Supreme Court in an early case (Utt v. Long, 6 W. & S. 174, 178) gave the second section of the Act of 1829, supra, a broader construction than the first section of the act, and, in Miller's Exrs. v. Lint, 36 Pa. 447, even suggested applying it in principle to landlords who *defend* in the name of their tenants in ejectment. See also cases, irrespective of the Act of 1829, which hold that the person having the beneficial interest in the litigation is considered as the substantial plaintiff, though his name does not appear on the record: Canby v. Ridgway, 1 Binney 496 (1808); Bury v. Hartman, 4 S. & R. 175, 184 (1818); Gallagher v. Milligan, 3 P. & W. 177, 178; Montgomery v. Grant, 57 Pa. 243, 246; Armstrong v. City of Lancaster, 5 Watts 68; Tomb's App., 9 Pa. 61, 66; Gifford v. Gifford, 27 Pa. 202. But in none of the cases was it decided that the second section of the Act of 1829 authorizes an execution for costs against an equitable plaintiff after judgment, who could not have become a

Note 2. "Section 319. Where a third person is liable to the employe or the dependents for the injury or death, the employer shall be subrogated to the right of the employe or the dependents against such third person, but only to the extent of the compensation payable under this article by the employer. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe or to the dependents, and shall be treated as an advance payment by the employer on account of any future instalments of compensation."

use plaintiff on the record before judgment. The section intends to impose a liability for costs upon one who could have been named on the record as a use plaintiff before verdict and judgment.

This seems to be the principle underlying the decision in Beck v. Germantown Cricket Club, 45 Pa. Superior Ct. 358, relied on by appellant, which held that the Act of 1829 did not apply to actions in tort for unliquidated damages; for President Judge RICE, speaking for this court, said in that case: ''The legal question is, whether by taking the assignment [before verdict] under the circumstances stated [page 360], the assignees became equitable plaintiffs and by that act alone made themselves liable for the costs...... Construing this section [Section 2 of the Act of 1829] in the light of the context and the subject-matter of the entire act, it would be a strained conclusion that would make it apply to assignments before verdict of unliquidated claims for damages in actions ex delicto. The reason for not extending the statute, by construction, to such a case is obvious when it is remembered that such claims are not assignable before verdict ...... It is apparent, therefore, that the assignment gave these parties no rights, legal or equitable. It will be observed that the act requires that the interest of the person whose name is suggested as equitable plaintiff be set forth in the affidavit. It therefore plainly implies that the person must have an interest. But here, as we have seen, the persons whose names were suggested had no interest whatever. An application on their part to have their names entered as equitable plaintiffs would have been refused, if no other interest had been alleged as ground for the application than an assignment before verdict. It would be an anomaly to hold that one who is not an equitable plaintiff, and cannot be named as such on the record upon his own suggestion, may nevertheless be

made an equitable plaintiff by the defendant. The assignment being treated as a nullity, as under the decisions it must be, and there being no other ground upon which the appellants could be declared to be equitable plaintiffs or persons for whose use or benefit the suit was prosecuted, it follows that the rule to show cause granted at their instance should have been made absolute.'' It would seem, therefore, that the decision of the present appeal rests on the answer to the question whether or not this appellant had such an interest in the litigation that it could properly have become a use plaintiff to the action before verdict. If it could, the judgment should be affirmed; if not it should be reversed.

As we have seen, section 319 of the Workmen's Compensation Act subrogates the ''employer'' to the right of action of the employe or his dependents against a third person liable to him for his injury, or to them for his death, to the extent of the compensation payable by the employer. And this permits the employer to appear in the action against such third person as a use plaintiff: Gentile v. P. & R. Ry. Co., 274 Pa. 335; Mayhugh v. Somerset Tel. Co., 265 Pa. 496; Wilson v. Pittsburgh B. & I. Works, 85 Pa. Superior Ct. 537. But this section, standing alone, would not include the insurance carrier, for the latter is not included in the definition of ''employer'' in the Act, (Sec. 103, p. 736).

The policy of insurance issued by this appellant to the employer contains a clause subrogating it ''in case of any payment under this policy, to the extent of such payment, to all rights of recovery therefor vested by law either in this employer *or in any employe or his dependents claiming hereunder* against persons, corporations, associations or estates.'' [Italics ours.]

The general assembly has the power to give, either

expressly or by implication, to persons interested, a right of acquiring, by assignment or subrogation, an interest in a claim for unliquidated damages arising out of a tort before verdict; and in Fidelity T. & T. Co. for use of Ins. Co. of North America v. Peoples Natural Gas Co., 150 Pa. 8, and Stoughton for use of Phoenix Assurance Co. and Western Assurance Co. v. Manufacturers' Gas Co., 165 Pa. 428, it was held that a subrogation clause in a fire insurance policy similar to that appearing in the policy issued by this appellant, gave the insurance company the right to appear as a use plaintiff against the third person responsible for the loss. Section 21 of the Act of June 2, 1915, P. L. 762, providing for the creation of the State Workmen's Insurance Fund subrogates the Fund to every right of the employer arising out of the accident against the employe, the dependents, and third persons. And the Act of June 2, 1915, P. L. 769, regulating policies of insurance against liability arising under article three of the Workmen's Compensation Act of 1915, provides: "That no policy of insurance against liability arising under article three of the Workmen's Compensation Act of 1915 shall be made, unless the same shall contain the agreement of the insurer that, in the event of the failure of the insured promptly to pay any instalment of compensation insured against, the insurer will forthwith make such payments to the injured employe, or the dependents of the deceased employe, and that the obligations shall not be affected by any default of the insured, after the accident, in the payment of premiums, or in the giving of any notices required by such policy, or otherwise. Such agreement shall be construed to be a direct promise to such injured employe and to such dependents enforceable by action brought in the name of such injured employe or in the name of such dependents."

(Sec. 1.) See also Act of May 17, 1921, P. L. 682, relating to insurance, Art. VI, Secs. 651, 653 and 654.

This provision gives the employe and his dependents a direct right of action against the insurance company on the policy issued by it to the employer; and in view of the subrogation clause in the policy which carries it into effect, we think it carries with it, for the benefit of the insurance carrier, the correlative right of subrogation provided for in the policy, to the extent given by Section 319 of the Workmen's Compensation Act, as respects any right of action against a third person responsible for the injury, where the insurance carrier has paid the lawful compensation awarded or agreed upon to the employe or his dependents; that in such event, the insurance carrier, which stands in the place of the employer, as respects its direct liability for the payment of compensation to the injured employe or his dependents, likewise stands in his place as respects subrogation to the latter's rights against a third person responsible for the accident; and is not obliged to work out its rights solely in the name of, or in an action against, the employer, who has not personally made any of the compensation payments; but may appear in the litigation as a use-plaintiff interested in the claim against such third person.

Such a course was actually adopted in the case of Smith to the use of McDonnell and the Maryland Casualty Co. v. Yellow Cab Co., 87 Pa. Superior Ct. 143, affirmed in 288 Pa. 85, and although not specially referred to nor approved in the opinion, it was not disapproved, and we believe it to be in accord with proper practice.

In the present case the compensation agreement was entered into between Mrs. Neal and this appellant, as the insurance carrier of the employer. The appellant paid all the compensation which the widow of the de-

ceased employe received for herself and her children up to the entry of judgment in the trespass action against the railway company, and since, and was entitled to all payments by way of subrogation which were payable out of any judgment recovered against the railway company; and to secure its interests in such subrogation it had the right to appear on the record of the action in trespass as a use plaintiff even before verdict. Having such an interest in the litigation which warranted its appearing on the record as a use plaintiff and having taken an active part in the actual conduct and prosecution of the action, it follows that the court below committed no error in making it responsible as an equitable plaintiff for the costs of suit, when judgment non obstante veredicto was entered for the defendant.

Judgment affirmed.