## Di Giosio v. George et al., Trustees

*O. K. Eaton* and *Jacob Frank*, for petitioner.

*J. R. McNary*, for defendant.

*James Balph* and *Ernest Frey*, for W. G. Balph Co., claimant.

*Louis M. Goehring*, for L. A. Rust Co., claimant.

THOMPSON, J., March 10, 1942.—This case came before us on a petition of plaintiff at the above number and term setting forth that there had been a verdict for plaintiff in the sum of $1062.50; that a motion for a new trial was filed and argued and later refused on June 18, 1941; that petitioner had employed counsel on a contingent basis and under a power of attorney, which is attached to the petition and marked exhibit "A"; that on June 19, 1939, plaintiff assigned a part of his claim to W. G. Balph and M. C. Balph, partners trading as W. G. Balph Company, amounting to $244.76 with interest from June 9, 1939, said sum being payable out of any moneys that may be recovered in this case; that a copy of the assignment is attached to the petition as exhibit "B"; that L. A. Rust Company had issued an attachment execution at no. 1402, April term, 1941, in this court and had summoned the above-named defendants as garnishees to recover the sum of $510.25, and lastly, that there were certain hospital and doctor bills for medical services to plaintiff in connection with the accident which he had sustained, and which was the basis of this suit as follows: Homestead Hospital, $245; Dr. Max Weinberg, $75; Dr. Lloyd Thompson, $265; Dr. H. W. Wuerthele, $290; and that

the said hospital and doctors above mentioned expected payment out of the above verdict; petitioner requests that this court determine such distribution of the amount of the verdict as might seem just and equitable under the circumstances.

Since the granting of the rule on the above petition, judgment has been entered on the verdict, and the money involved has been paid into court by defendants, and a stipulation of counsel agreeing to certain facts has been also presented to us.

The stipulation of counsel, inter alia, recites that judgment was entered on the verdict on January 24, 1942.

The case now, therefore, seems ready for action in accordance with the prayer of the petition.

The claims of the hospital and the doctors, which of course constitute an obligation which should be paid by plaintiff and are no doubt meritorious claims, are not, as we understand it, a lien upon the fund now before us, and we are not aware of any suits brought or attachments based on these claims. We are, therefore, without jurisdiction to award any part of the fund to these claimants.

The facts now before us indicate that, when this court was asked by plaintiff to direct that a transcript of the testimony be made in connection with a motion for a new trial, the court imposed as a condition that the costs of such transcript be paid out of any verdict that might finally be established. The costs of the County of Allegheny for this transcript were the sum of $87.60 and the first charge upon the fund would be the record costs of this case, including witness fees, which have now been established, and the claim of the County of Allegheny for $87.60.

Counsel for plaintiff has an agreement providing for a contingent fee of 40 percent of the amount recovered. A power of attorney so providing is set forth as exhibit "A" in the petition and the attorney men-

tioned is Jacob Frank. Jacob Frank is, therefore, entitled to 40 percent of the balance of the fund in court after deduction of record costs, including witness bill and the claim of the County of Allegheny of $87.60.

We now reach the real difficulty in connection with this distribution. Prior to the trial of the case, plaintiff made an assignment of a portion of the amount he expected to recover, to wit, $244.76 with interest from June 9, 1939. The verdict was rendered on February 6, 1941, for the sum of $1062.50. On the following day February 7, 1941, an execution attachment was issued by L. A. Rust Company, and defendants summoned as garnishees for the sum of $510.25 and this writ was served on defendants on February 10, 1941. On February 8, 1941, the day following the issuance of the Rust Company execution attachment, a motion for a new trial was made. This motion was subsequently argued and on June 18, 1941, was refused. The Rust Company attachment was issued one day after the verdict, but before a motion for a new trial had been filed.

Chronologically, the next claim to be considered is that of W. G. Balph and M. C. Balph, partners trading as W. G. Balph Company, amounting to $244.76 with interest from June 9, 1939. Plaintiff assigned that sum to claimants out of his anticipated verdict. Under the common law, a chose in action of this character could not be assigned. It is the contention of claimants, W. G. Balph and M. C. Balph, partners trading as W. G. Balph Company, that the common law has been modified and an equitable assignment of choses in action of this character can now be recognized and enforced.

This question is dealt with in the case of Rice v. Stone et al., 83 Mass. (1 Allen) 566, which has been cited with approval and quotations made from it twice by our Superior Court: first in Beck v. Germantown Cricket Club, 45 Pa. Superior Ct. 358, and again in Manganiello et al. v. Lewis, 122 Pa. Superior Ct. 435.

The theory of an equitable assignment, which these claimants now set up, was discussed in Rice v. Stone et al., supra, and the court said in its opinion at page 568:

"No case is cited where it has been held that an assignment of a claim for damages for an injury to the person has been held good, when the assignment was made before judgment in an action for the tort. Such claims were not assignable at common law."

After making some explanation of these statements, the court goes on to say:

"The other reason is, a principle of law, applicable to all assignments, that they are void, unless the assignor has either actually or potentially the thing which he attempts to assign. A man cannot grant or charge that which he has not. . . . A claim to damages for a personal tort, before it is established by agreement or adjudication, has no value that can be so estimated as to form a proper consideration for a sale. Until it is thus established, it has no elements of property sufficient to make it the subject of a grant or assignment. . . .

"The character of this class of claims is not changed in this respect by a verdict before judgment. It must be made the subject of a definite judgment before it is assignable; a judgment upon which a suit may be brought. *Stone v. Boston & Maine Railroad*, 7 Gray, 539. . . .

"In North v. Turner, 9 S. & R. 244, the claim was for trespass *de bonis*, and it was held to be assignable under the laws of Pennsylvania; but *Gibson*, J., admits that some claims are not assignable. He says: 'There are undoubtedly some injuries which so particularly adhere to the person of him who has suffered them, as to preclude an assignment of his claim to compensation for them so as to make him a witness; such, for instance, as slander; assault and battery; criminal conversation with the party's wife, and many others that might be mentioned. . . .

"In view of these, and many other authorities to which we have referred, we are of opinion that the ancient doctrine of the common law on this subject is still in force, and that the reasons on which it was originally founded are still valid. As an assignment of a claim for a personal injury is void, though it is made after verdict in an action to recover damages for the injury, the claim of the defendant Perrin cannot prevail."

A contention somewhat similar to that raised by these claimants was dealt with in Beck v. Germantown Cricket Club, supra. In this case a verdict had been rendered and an appeal taken to the Supreme Court. After the return of the record to the common pleas court, defendant filed in that court a paper suggesting the names of certain appellants as equitable plaintiffs in the case which suggestion was accompanied by the affidavit of the secretary of the defendant association to the effect that Mary Beck, by an assignment dated November 15, 1909, assigned all her right title and interest in the verdict to these persons. President Judge Rice said (p. 360) :

"It appears from the depositions submitted on the hearing of the rule, that the assignment was agreed to, immediately reduced to writing and executed after the jury had retired to deliberate and before they rendered their verdict, and, although absolute in form, was given and accepted merely as collateral security for the attorney fee of $500 theretofore agreed to be paid to one of the assignees for his services in the case, the bill of one of the other assignees, amounting to $100, for medical services, and the sum due Mary O'Hay, the other assignee, for money advanced and as compensation for taking care of the plaintiff for three years.

"The legal question is, whether by taking the assignment under the circumstances stated the assignees

became equitable plaintiffs and by that act alone made themselves liable for the costs."

The court went on to cite the Act of April 23, 1829, P. L. 455, the second section of which reads as follows:

"That the equitable plaintiff or person for whose use or benefit, and at whose instance any action has been or may be prosecuted, whether named on the record or not, shall be liable to execution on judgment, against the legal plaintiff or plaintiffs: provided, that where such equitable plaintiff or plaintiffs were not named on the record previous to judgment, his name shall be suggested on the record, supported by affidavit of his interest in the cause, before execution shall issue."

The court further said:

"Construing this section in the light of the context and the subject-matter of the entire act, it would be a strained conclusion that would make it apply to assignments before verdict of unliquidated claims for damages in actions ex delicto. The reason for not extending the statute, by construction, to such a case is obvious, when it is remembered that such claims are not assignable before verdict."

The court then went on to cite two recent cases in Pennsylvania holding that a right of action for personal injuries cannot be assigned before verdict, and also the case of Rice v. Stone, supra, and said:

"In Sensenig v. Penna. R. R. Co., 229 Pa. 168, it is said: 'A right of action strictly personal is not assignable and the general doctrine is, both in law and equity, that a right of action for a pure tort is not the subject of assignment: 2 Am. & Eng. Enc. of Law, 1020.' "

In Manganiello et al v. Lewis, supra, the court said (p. 437):

" 'A right of action for a tort purely personal, in the absence of a statute modifying the general rule, is not subject to assignment before judgment': 5 C. J. 887. The case of Marsh v. Western N. Y. & P. Ry. Co. 204 Pa. 229, 231, 53 A. 1001, involved an action for per-

sonal injuries and what was there said is pertinent here. 'The claim is at most, one for unliquidated damages, in an action sounding in tort, and is therefore under the authorities, not capable of assignment before verdict. . . .' "

The court then referred to and quoted from Rice v. Stone, supra.

A. L. I. Restatement of Contracts, §547(1), reads as follows:

"(1) An assignment of a claim against a third person or a bargain to assign such a claim is illegal and ineffective if the claim is for . . .

"(d) damages for an injury the gist of which is to the person rather than to property, unless the claim has been reduced to judgment. . . .

"*Comment on Subsection* (1): . . .

"(e) Damages for personal injuries such as assault, libel, slander, breach of promise to marry, are not assignable under the rule stated in this Subsection. Some injuries caused by a single act involve an injury of this sort, and also an injury to some property interest. Under the rule stated in this Subsection an assignment of a right to recover damages is not permissible if the injury is in the main personal."

It seems, therefore, that neither at common law nor in equity can an assignment made before verdict in an action for personal injuries be sustained.

The next claim is that of L. A. Rust Company, which issued an attachment execution at no. 1402, April term, 1941, and summoned the above-named defendants as garnishees to recover the sum of $510.25. This attachment execution was issued a day after the verdict was rendered. Thereafter a motion was made for a new trial, which was subsequently argued and refused.

An attachment execution, unlike an assignment of a tort claim, is not a voluntary act upon the part of defendant, but an involuntary act through an adverse legal proceeding. It has been held that an attach-

ment execution binds property which comes into the hands of a defendant after the time of the execution and between that date and the date of trial. The effect of an attachment execution is, therefore, quite different from that of an assignment and is also different from the effect of a foreign attachment. This difference has been explained at length in Sniderman et al. v. Nerone et al., 136 Pa. Superior Ct. 381. In Frazier et al., execs., v. Berg et al., 306 Pa. 317, the Supreme Court, in discussing the effect of an attachment execution, said at page 323:

"The vital legal point at issue is this: Does an attachment execution bind all funds of the defendant coming into the hands of the garnishee up until the time of trial or does it grasp only those received up to the time when answers to interrogatories are filed or plea is entered?" The court further said (p. 325):

"In our opinion, under modern conditions with the reasons for issues raised by pleas having largely ceased to exist, when the tendency in litigation, as in everything else, is in the direction of saving time and disposing of controversies in a single proceeding, if this can be accomplished and justice be done, the rule should prevail that such process binds all property belonging to the defendant or money due him, in the hands of a garnishee, which the latter receives up to the time of trial, and we so announce our ruling. Plaintiffs, therefore, were entitled to have included in their verdict all sums coming into the garnishee's hands and owed by him to defendant up to the date of trial."

In the case at bar at the time of the serving of the Rust attachment, there was no sum of money actually in the hands of the garnishees belonging to defendants, nor could it be said with any assurance that such would ever be the result, but if, as Frazier et al., execs., v. Berg et al., supra, holds, the attachment bound all money which might become due to defendant up until the time of the trial of the attachment proceeding, then

the Rust attachment bound the indebtedness which came into the hands of defendants when a new trial had been refused, and when judgment was subsequently entered, and when those latter dates were reached the Rust attachment had priority over the subsequent attachment proceeding, which we will later mention.

In Sniderman et al. v. Nerone et al., supra, the court said at page 383:

"Appeal No. 123 is primarily a contest for priority between two attaching judgment creditors of Domenic Nerone.

"Nerone brought an action in trespass for personal injuries against Equitable Gas Company, hereinafter called Equitable, and on May 25, 1937 recovered a verdict for $2500.

"Two days thereafter Sniderman, the appellee, issued an attachment execution on his judgment and served the same on Equitable as garnishee.

"Equitable thereafter obtained a new trial in said action. On the retrial a verdict of $1000 was rendered in Nerone's favor on April 13, 1938, which was not further contested.

"On April 13, 1938 Nerone assigned of record his verdict to his attorney, J. Thomas Hoffman; and on the same day, the appellant, Morris A. Hershenson issued attachments in execution on two judgments which he held against Domenic Nerone et al., which were served simultaneously on Equitable the same day at 3:30 o'clock P. M.

"Equitable has in its hands no money or property of Nerone except the said sum of $1000, representing the verdict in said action."

This court entered judgment in favor of Sniderman " '. . . subject to the rights and interest of J. Thomas Hoffman, Esq., in the fund, to the amount of his attorney's fees, costs and legal expenses".

The claim of Hershenson, a subsequent attaching creditor, who issued his attachment after the final verdict, was determined adversely to appellant and like-

wise was the appeal of Sniderman from the order making his judgment subject to the rights and interest of J. Thomas Hoffman, Esq.

The court said at page 384:

"While we recognize that an unliquidated claim for damages for personal injuries is not assignable nor subject to attachment, when Sniderman issued and served his attachment execution the defendant in the judgment, Nerone, had a claim against Equitable which had been liquidated and was subject to attachment. We think this was sufficient to bind any moneys or property thereafter coming into the hands of the garnishee, up to the time of the trial of the attachment or judgment on interrogatories. The fact that a new trial was afterwards granted Equitable did not destroy this priority as respects any verdict or judgment thereafter obtained in the action."

Sniderman et al. v. Nerone et al., supra, as to the portion of the case where Hershenson was the appellant, was affirmed by the Supreme Court in Sniderman v. Nerone et al., 336 Pa. 305, in a per curiam opinion.

It follows, we think, from these authorities that the claim of L. A. Rust Company, under its execution attachment at no. 1402, April term, 1941, is entitled next to participate in the fund before us after the claim of Jacob Frank, Esq.

If there is any further sum which is not distributed after the claim of the Rust Company has been satisfied, it will be distributable to the Wilkinsburg Bank for the use of W. G. Balph and M. C. Balph, partners, trading as W. G. Balph Company, for $244.76 with interest from June 9, 1939, at no. 2842, January term, 1942.

The order of participation in the fund in court should, therefore, be as follows:

1. The record costs, witness fees, and claim of the County of Allegheny for transcript of testimony;

2. The claim of Jacob Frank, Esq., for 40 percent of the remainder of the fund as counsel fees;

3. The attachment execution of L. A. Rust Company against plaintiff at no. 1402, April term, 1941, to recover the sum of $510.25.

4. The balance, if any, in the fund is distributed as previously directed to the Wilkinsburg Bank for the use of W. G. Balph and M. C. Balph, partners, trading as W. G. Balph Company, for $244.76 with interest from June 9, 1939, by reason of execution attachment at no. 2842, January term, 1942.

## Order of court

And now, to wit, March 10, 1942, the prothonotary is directed to distribute the fund in the hands of the court in the above-entitled proceeding as follows:

1. To the record costs, witness fees, and claim of the County of Allegheny for transcript of testimony;

2. To the claim of Jacob Frank, Esq., for 40 percent of the remainder of the fund as counsel fees;

3. To the attachment execution of L. A. Rust Company against plaintiff at no. 1402, April term, 1941, to recover the sum of $510.25.

4. The balance, if any, in the fund to the Wilkinsburg Bank for the use of W. G. Balph and M. C. Balph, partners, trading as W. G. Balph Company, for $244.76 with interest from June 9, 1939, by reason of execution attachment at no. 2842, January term, 1942.