## Curran *v.* Delano, Appellant.

*Mines and mining—Boundary pillars—Width of—Jurisdiction
of equity to determine width—Act of June 2, 1891, Art. III, Sec.
10, P. L. 176, Act of March 21, 1806, 4 Sm. L. 326.*

1. Under the Act of June 2, 1891, Art. III, Sec. 10, P. L. 176,
entitled "An act to provide for the health and safety of persons
employed in and about the anthracite coal mines of Pennsylvania,
and for the protection and preservation of property connected
therewith," a court of equity has no jurisdiction to determine the
width of a boundary pillar between two mines. Such width of
pillar is to be determined under the act by the engineers of the
adjoining property owners together with the inspector of the
district in which the mine is situated, and the jurisdiction of this
tribunal is exclusive. The fact that the owners of one of the mines
removed the coal from its mine up to the boundary line, cannot
deprive the statutory tribunal of the authority to determine the
proper width of the pillar, and confer such authority upon a court
of equity.

2. Where a decree has been entered on a bill in equity fixing
the width of the boundary pillar between two mines, the ap-
pellate court on an appeal from such decree will not reverse the
decree and dismiss the bill, but will direct the court below to re-
tain the bill until the width of the boundary pillar or the absence
of necessity for one shall have been determined by the inspector

and engineers, and surveys are made and filed as required by the Act of 1891, or until the inspector and engineers shall have decided that no pillar is needed for the safety of the employees of either mine. When such action has been taken, the court below will then enter a decree dismissing the bill.

3. Both at common law and under the Act of March 21, 1806, 4 Sm. L. 326, where a statute creates a right or liability, or imposes a duty, and prescribes a particular remedy for its enforcement, such remedy is exclusive and must be strictly pursued.

Argued Feb. 12, 1912. Appeal, No. 371, Jan. T., 1910, by defendants, from decree of C. P. Schuylkill Co., March T., 1909, No. 3, on bill in equity in case of John E. Curran, Mine Inspector in the Eighteenth Anthracite District of the State of Pennsylvania v. Warren Delano Jr. and Frederick A. Delano, Trustees under the last will and testament of Warren Delano, deceased, and under the last will and testament of James S. Cox, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Bill directed to be retained.

Bill in equity for an injunction. Before BECHTEL, J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned,* was decree awarding injunction.

*Guy E. Farquhar* and *C. E. Berger,* with them *Otto E. Farquhar,* for appellants.—This act of assembly is very broad and not only provides that where a remedy is provided or duty enjoined, but also when anything is directed to be done by any act or acts of assembly, the direction of the said acts shall be strictly pursued.

This act of assembly has been very strictly construed.

The remedy provided by the act need not be a legal remedy or proceedings at law in any court: Chestnut Hill Turnpike Company v. Martin, 12 Pa. 361; Collins v. Collins, 37 Pa. 387; Huntingdon, Cambria & Indiana Turnpike Co. v. Brown, 2 Penrose & Watts 463; Peter v.

Schlosser, 81 Pa. 439; Moreland Twp. v. Gordner, 109 Pa. 116.

It is respectfully submitted, that the court has no jurisdiction over the subject matter of the width of the boundary pillar and could not obtain jurisdiction by acquiescence or consent of the parties.

*James J. Moran,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, March 18, 1912:

Warren Delano and James S. Cox were the owners of a tract of coal land in Schuylkill county. By a lease dated April 26, 1882, they leased the eastern portion of the tract to the Mill Creek Coal company; and by a lease dated March 8, 1888, they leased the western portion to certain persons who, on November 28, 1888, assigned the lease to the Dodson Coal Company. By an agreement dated January 16, 1889, the parties agreed upon and fixed a new boundary line between the properties of the two coal companies. In each of the leases it is provided that between the outer boundary lines of the demised premises and of the adjacent property there shall be left a solid wall of coal of at least sixty feet in thickness, which shall not in any manner be broken through without the written consent of the lessors. Prior to November 1, 1893, the Mill Creek Coal Company had driven its gangways on the north side up to its lines, and had not left a solid wall of coal within its outer boundary lines of sixty feet in width as required by its lease. About the date named the Mill Creek Company's breaker was burned and the workings filled with water and so remained until the colliery was reopened in 1906. The Dodson Coal Company extended its workings to within three hundred feet of the boundary line. In 1908, the trustees under the wills of Warren Delano and James S. Cox, then deceased, requested the Dodson Coal Company, their lessee, to mine and remove the coal up to and within one hundred and twenty feet of the

boundary line so as to leave a pillar of that width, as required by the leases, between the two mines.

The mine inspector notified the Dodson Coal Company not to mine within three hundred feet of the Mill Creek Coal Company's workings, but the notice was disregarded and the company proceeded to drive the gangway of the Buck Mountain vein into the barrier as required by the landowners. The mine inspector thereupon filed this bill against the two coal companies and their officers. The amended bill avers inter alia: that section 10 of article III of the Act of June 2, 1891, P. L. 176, states that "it shall be obligatory on the owners of adjoining coal properties to leave, or cause to be left, a pillar of coal in each seam or vein of coal worked by them, along the line of adjoining property, of such width, that taken in connection with the pillar to be left by the adjoining property owner, will be a sufficient barrier for the safety of the employes of either mine in case the other should be abandoned and allowed to fill with water;" that the barrier pillar now standing between the underground workings of the two collieries is three hundred feet in width and the defendants are extending the Buck Mountain gangway of the Dodson Coal Company's colliery east into the pillar and by so doing will reduce the width thereof, and any reduction of such width will make it insufficient for the safety of the employes of either mine in case the other should be abandoned and allowed to fill with water; and that the defendants had been notified by the mine inspector not to extend the gangway any further east and that by so doing the width of the barrier pillar would be decreased and the lives of all persons working in either of said mines would be endangered in case the other should be abandoned and allowed to fill with water. The bill prays that the defendants be restrained from extending the Buck Mountain gangway in the Dodson Coal Company's colliery any further into the barrier pillar, "or doing any other matter or thing whatsoever that may re-

duce the width of said barrier pillar," and for general relief. Each of the two coal companies and their officers filed answers. Subsequently, Warren Delano Jr., and Frederick A. Delano, trustees under the wills of Warren Delano, deceased, and James S. Cox, deceased, were permitted to intervene as defendants. They filed a demurrer and, that being overruled, filed an answer. The learned court entered a decree against all of the defendant's restraining them from reducing the width of the barrier pillar by extending the Buck Mountain gangway in the Dodson Coal Company's mine any further into the barrier pillar and from making any other opening in any of the lifts of the mine, and from doing any other matter or thing that would reduce the width of the barrier pillar to less than three hundred feet. From that decree the trustees of the two estates have taken this appeal, and have assigned as error, inter alia, the overruling of the demurrer.

The trustees allege as one of the grounds of demurrer that the bill does not set out facts which entitle the plaintiff to the relief prayed for. They contend that under the facts averred the court has no jurisdiction, that the prayer of the bill requires the court to determine the width of the barrier pillar in order to give the relief prayed for, and that the act of 1891 having prescribed the method of determining the necessity as well as the width of a barrier pillar, the remedy therein prescribed must be pursued, that it is not averred that the width of the boundary pillar had been determined as required by the act, and that, therefore, the bill would not lie. We think the learned court below erred in not sustaining this contention, and in overruling and dismissing the demurrer filed by the trustees.

It will be observed that the bill is based on article III, section 10, of the Act of June 2, 1891, P. L. 176, 3 Purd. 2566; that it avers that the reduction of the width of the present barrier pillar would make it insufficient for the safety of the mine employes; and that the decree en-

joins the defendants from reducing the width of the barrier pillar to less than three hundred feet. A large amount of testimony was taken by the learned court below for the purpose of determining what width of pillar between the two collieries was necessary to protect the employes. The proceeding, therefore, from its inception to and including the final decree was for the purpose of establishing the proper width of a barrier pillar which should be left to protect the employes in the Dodson Coal Company's mine. The court was without jurisdiction to determine the question, which was exclusively cognizable by the tribunal created by the act of 1891.

Section 10 of article III of the Act of June 2, 1891, P. L. 176, after requiring the owners of adjoining coal properties to leave between their mines a barrier pillar of sufficient width, as averred in the bill, provides as follows: "Such width of pillar to be determined by the engineers of the adjoining property owners, together with the inspector of the district in which the mine is situated, and the surveys of the face of the workings along such pillar shall be made in duplicate and must practically agree. A copy of such duplicate surveys, certified to, must be filed with the owners of the adjoining properties and with the inspector of the district in which the mine or property is situated." The statute, therefore, not only makes it obligatory upon the owners of the adjoining properties to leave a boundary pillar, but provides the tribunal by which the width of the pillar is to be determined. The jurisdiction of that tribunal is exclusive, and the court is without authority to determine the question. It is settled both at common law and under our act of March 21, 1806, 4 Sm. Laws 326, 1 Purd. 271, that where a statute creates a right or liability or imposes a duty, and prescribes a particular remedy for its enforcement, such remedy is exclusive and must be strictly pursued. It is, therefore, apparent that unless there was some controlling reason why the

statutory remedy could not be pursued and the width of the boundary pillar could not be determined by the tribunal created by the statute, a court of equity had no jurisdiction to determine the width of the pillar. We do not understand that the learned court below controverts this position, but holds that the method provided in the statute for the determination of the size of the boundary pillar does not apply to the case at bar "for the reason that the Mill Creek Coal Company, which is one of the adjoining owners, has mined the coal and extended its gangways up to the line between the lands leased to the Dodson Coal Company and the lands leased to the Mill Creek Coal Company, so that all the coal remaining, out of which the pillar is to be composed, is entirely on the Morea side of the mine and belongs to the Dodson Coal Company under its lease." We do not think this position is tenable. The purpose of the act was not only to require the owners of adjacent collieries to leave a boundary pillar, if necessary, but also to create a tribunal for the purpose of determining the necessity of the pillar and the width thereof. The averments of the bill disclose that the plaintiff's right to require a boundary pillar to be left is based upon the act of 1891. It recites the pertinent provision of the act, and then avers that a smaller dimension than a certain width would render the barrier pillar insufficient for the protection of the employes of the mine. The manifest purpose, therefore, in filing the bill, as appears by its averments and the decree entered by the court below, was to have the chancellor determine the proper width of the barrier pillar, and to restrain the defendants from "doing any other matter or thing whatsoever that may reduce the width of said barrier pillar." We are at a loss to see how the fact that the Mill Creek Company removed the coal from its mine immediately adjacent to the boundary line can deprive the statutory tribunal of the authority to determine the proper width of the pillar. If that tribunal should determine that no barrier pillar

is necessary, it follows that the Mill Creek Company had the right to remove all the coal on its side of the boundary line. If, however, it should determine that a pillar of a certain width was necessary to protect the mine and the employes working therein, the fact that the adjacent property owner removed the coal in violation of its duty would not oust the jurisdiction of the tribunal created by the act of 1891. In such case, what the consequences to the owner of the adjacent colliery may be we are not concerned with in this case, and hence need not determine. That question can await a decision when a proper suit has been brought and the proper parties are before the court for its determination. The tribunal created by the statute, composed of two mining engineers and a mine inspector, is more competent to determine the proper width of the boundary pillar than a judge inexperienced in such matters and who must rely upon the information he obtains from witnesses. The voluminous testimony in this case shows the diversity of opinion of the several witnesses, and also discloses the wisdom of the statute in providing a tribunal composed of three mine experts to determine the question. The purpose of the statute is, as disclosed by its title, "to provide for the health and safety of persons employed in and about the anthracite coal mines of Pennsylvania and for the protection and preservation of property connected therewith." Ample provision is made in other sections for the purpose of carrying out other requirements of the statute, but none of them confers jurisdiction upon a chancellor to determine the width of a boundary pillar between adjacent collieries. The remedy provided in the 10th section of article III of the statute must, therefore, be pursued, and the act of the Mill Creek Company in removing the coal from its mine adjacent to the barrier cannot confer jurisdiction on a court of equity.

Following the practice established in Commonwealth v. Plymouth Coal Company, 232 Pa. 141, we will not now reverse the decree and dismiss the bill, but will di-

rect the court below to retain the bill until the width of the boundary pillar, or the absence of necessity for one, shall be determined by the inspector and the engineers and surveys are made and filed as required by the act of 1891, or until the inspector and engineers shall decide that no pillar is needed for the safety of the employes of either mine. When such action has been taken, the court below is directed to enter a decree dismissing the bill at the costs of the appellee.