Ruggles et al. *v.* Moore et al., Appellant.

48

Argued April 26, 1929.

Before TREXLER, KELLER,

LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Joseph W. Beaman,* and with him *Wm. G. Schrier,* for appellants.—A county engineer may not be paid without appointment and fixing salary: Waltman v. Albany Twp. Sch. Dist., 64 Pa. Superior Ct. 458; Auditor's Report, 245 Pa. 17.

Painting of county bridges may be done only after public letting, on competitive bids: Union County v. Northumberland, 281 Pa. 62; Investor's Realty Co. v. Harrisburg, 281 Pa. 200; Phila. Co. v. City of Pittsburgh, 253 Pa. 147; Addis v. Pittsburgh, 85 Pa. 379.

There was no authorization by the grand jury for alterations, repairs and improvements on the children's home: Taylor v. Poor District, 50 Pa. Superior Ct. 317; County of Bradford v. Horace Horton et al., 6 Lack. L. N. 306.

Commissioners may not make repairs and improvements to county buildings without plans, specifications and competitive bidding, and without separate plans, specifications and competitive bidding for electrical work, heating and plumbing: Hanover Township School District Audit, 265 Pa. 157; Sykesville Boro., 91 Pa. Superior Ct. 335.

*John C. Ingham,* and with him *Rodney A. Mercur,* for appellees, cited: Mansel v. Nicely, 175 Pa. 367; Com. v. Snyder, 261 Pa. 57; Wyoming County v. Auditors, 30 County Courts 631; Perry v. City of Los Angeles, 106 Pac. 410; Bayes v. Town of Paintsville, 179 S. W. 623; Brooks v. Buckley, 291 Pa. 1; Garr v. Fuls, 286 Pa. 137; Harris v. Bradford Co., 30 D. R. 834.

OPINION BY CUNNINGHAM, J., July 2, 1929:

This case came before the court below in the form of an issue framed to try an appeal by taxpayers from the report of the auditors of Bradford County, settling the accounts of the county commissioners, who are also overseers of the poor, of Bradford County for the year 1923. Some objection was made in the court below to the consideration of items affecting the county and the poor district in the same proceeding. This objection, which was not raised until long after the proceedings had been commenced, was disregarded by the court below, and we shall follow the same course. In the order framing the issue it was directed that the commissioners and overseers should be plaintiffs and the taxpayers defendants; the case was tried by President Judge NEWCOMB of the 45th Judicial District, specially presiding, without a jury. The trial judge sustained four of the taxpayers' exceptions to the auditors' report; surcharged the commissioners $749; and entered judgment against them in favor of the county for that amount. The remaining exceptions to the auditors' report were dismissed and we now have this appeal by the taxpayers.

Appellants have stated six questions involved. They relate to five widely different subjects and raise five distinct issues, which we shall consider separately and in order.

Appellants' first contention, covered by their first

assignment of error, is in regard to an item of $75 paid to one F. R. Prince, for services rendered as clerk to the county auditors. The ground of the objection is that Mr. Prince was at the same time clerk to the county commissioners. It is contended by appellants that by virtue of his appointment as clerk to the commissioners he became a salaried officer of the county; that the county was entitled to his time and services for the compensation fixed at the time of his appointment; and that he was not entitled to additional compensation. With this argument we are not in sympathy. We think that the services rendered by him as clerk to the auditors were not such as he might be expected to render by virtue of his position as clerk to the commissioners. For another reason, however, we feel that he was not entitled to the extra compensation claimed.

It appears from the testimony that he was responsible for keeping the county books, which were audited. We think there are strong considerations of public policy which made it improper for him to act in any capacity for the auditors. It is true, as appellees contend, that he had nothing to do with the actual audit; but he did make up the auditor's report. We do not regard it as important that certain items were condensed in the report. We find nothing in the record indicating that this was done from an improper motive, or that any material item was concealed. Granting that Mr. Prince was entirely innocent of any wrongdoing, we regard his employment in any capacity by the county auditors as improper. The testimony discloses that Prince paid out of the $75 received by him the sum of $37.50 for having the auditors' report typewritten. This was a necessary expense incident to the preparation of the report. We therefore sustain ap-

pellants' first assignment of error to the extent of $37.50 only.

Appellants state their second question, covered by the second assignment of error, as follows: "May county engineer be paid without appointment and fixing salary?" The difficulty with this objection is that it does not fit the facts, which are these: Prior to this proceeding, Bradford County had never taken advantage of the provisions of section 1 of the Act of May 8, 1919, P. L. 163, permitting the appointment of a county engineer for a term of four years at a salary to be fixed by the county commissioners. Beginning in 1898, Mr. David A. Keefe had been employed by the county from time to time in connection with the construction of bridges at various points. He is admittedly a competent engineer with an excellent reputation. It was customary for him to bill the county at the rate of five per cent. of the cost of the structure. It does not appear that the sums so paid were in any way excessive or exorbitant. Appellants' whole argument is apparently based on the contention that the Act of 1919, supra, is mandatory and exclusive. With this we do not agree. The statute reads: ".... ... the county commissioners *may* appoint a competent civil engineer;" this language is permissive, not mandatory. It is to be noted that, if such an official is appointed, he is entitled to draw his salary whether his services be required or not. Mr. Keefe's charges were for work actually performed at the request of the county commissioners. We regard the contracts in question as properly within the general powers of the commissioners. This assignment of error must, therefore, be overruled.

We have reached a similar conclusion in regard to the third assignment, relating to certain expenditures for material and labor in connection with the painting

of county bridges. Appellants urge upon us the fact that there was no contract let after competitive bidding as prescribed by the Act of May 31, 1919, P. L. 355. The facts are conceded. Again, the answer to the argument is that the statute is not necessarily exclusive. The commissioners are required to keep the bridges in repair; if they do this by awarding a contract the provisions of the act must be followed: Philadelphia Company v. City of Pittsburgh, 253 Pa. 147. They are not, however, required to award a contract in every case; they may do the work themselves—19 R. C. L. 1069. Here they purchased the paint and employed a painter to apply it. Our conclusion makes it unnecessary to consider appellees' argument that the Act of 1919 is unconstitutional by reason of a defect in its tile. This assignment is overruled.

The fourth assignment of error attacks certain expenditures for supplies for the county poor house. Appellants contend that these payments were illegal because of the failure of the authorities to advertise for bids in all cases where the expenditure exceeded $150 as prescribed by the Act of May 23, 1913, P. L. 297. It is to be noted, however, that the Act of 1913 prescribes a specific penalty, in the form of a fine, upon the commissioners or directors of the poor who violate it. Appellants seek to subject appellees to an additional penalty in the form of a surcharge and money judgment thereon, but the rule is that where a statute imposes a duty, the presumption is that the remedy provided for a breach of that duty is exclusive: Mack v. Wright, 180 Pa. 472; Curran v. Delano, 235 Pa. 478; Brynelson v. Concrete Steel Company, 239 Pa. 346. The fourth assignment is overruled.

By the fifth assignment it is charged that the county commissioners made various illegal expenditures of public funds in connection with the making of altera-

tions, repairs and improvements in and to the Children's Home of the county. In general it is averred, first, that there was no authorization of the improvements by the grand jury as required by the Act of May 16, 1921, P. L. 666, and, second, that the work was done on the "cost plus" plan rather than by the awarding of a contract after competitive bidding.

In January, 1923, the county commissioners presented to the court of quarter sessions a petition under the Act of May 16, 1921, supra, asking for the approval of the grand jury for the purchase of a farm as a site for a children's home. The petition set forth the necessity for such a home and the fact that an option had been procured to purchase five and one-half acres of ground, upon which a large dwelling-house and other buildings were then erected, for a consideration of $9,000. The grand jury on January 24, 1923, presented a report finding that the purchase of ground for the home was necessary and that the ground upon which the commissioners had taken an option, and the buildings, with certain necessary improvements, were suitable for that purpose. The grand jury therefore approved the petition of the commissioners asking leave to purchase the said property. This report was subsequently approved by the court.

On the question of the effect and extent of the action of the grand jury the trial judge in the course of his opinion said: "What the grand jury said was either effective to sanction the expenditure necessary to put the 'buildings already erected' in shape to serve the purpose aimed at; or else it must be regarded as a vain thing, without practical result, other than the acquisition of a useless piece of real estate. Clearly that is not what the grand jury intended. With its approval and that of the court, the statute authorizes the acquisition of such county home in either one of two

ways: (1) By purchase of land and erection of buildings; and (2) by purchase of lands on which buildings had already been erected and to add such improvements as should be found necessary to fit them for the statutory use. It was the latter which was proposed and, on due examination, approved here by the proper tribunal. Their report must be taken as they made it. It was expressed in terms of the statute applying to the purchase of such parcel of land. If it was not intended to authorize the proper improvements they would hardly have troubled themselves to speak of the necessity. That the improvements added were 'necessary for the use,' etc., defined by the terms of the statute, is not disputed. And if that is not what the action of the grand jury contemplated, then its intent is past all understanding.''

Appellants contended that the Act of April 15, 1834, P. L. 537, relating to the alteration or enlargement of public buildings, applied to the situation arising in connection with the Children's Home, but the learned trial judge was of opinion that the Act of May 16, 1921, which, while applying generally to all counties of the fourth, fifth, sixth, seventh and eighth classes, appears from the record in this case to have been enacted with particular reference to the situation existing in Bradford County, is, as he described it, ''the organic act'' in this case and applies particularly to homes for indigent orphans.

The second contention of appellants in regard to the expenditures made for alterations, repairs and improvements to the Children's Home is based upon the fact that they were made without plans, specifications and competitive bidding, and without separate plans, specifications and competitive bidding for electrical work, heating and plumbing. The facts are not in controversy. The work was done by a contractor on

a cost plus contract. Our attention has not been directed to any statutory requirement that there be plans, specifications and competitive bidding for the work as a whole. Appellants base their contention that separate plans and specifications for the electrical work, heating and plumbing were necessary upon the provisions of section 1 of the Act of May 1, 1913, P. L. 155. Upon this issue the trial judge said: "This [the Act of 1921] is in the nature of a special charter, and, therefore, the criticism that the plumbing, lighting and heating should have been procured by contract founded upon separate specifications and competitive bids, as provided by Act of May 1, 1913, P. L. 155, would be of doubtful application even if the work had been done by technical contract. But the doubt need not now be resolved. The act has to do not only with such contracts, but with cases of construction, erection and alteration of buildings. As such it would not apply here as it was merely the repair and replacement of wires, pipes, heating fixtures, etc., which were out of condition and unserviceable." The fifth assignment is also overruled.

After a careful consideration of the entire record we are not convinced that there is any reversible error in the conclusions reached by the learned trial judge except to the extent indicated in our ruling upon the first assignment of error.

The surcharge against appellees is increased from $749 to $786.50 and as so modified the decree is affirmed, costs to be paid by appellants.