Taskey, Appellant, *v.* Pittsburgh.

574

Argued April 29, 1936.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Morris Zimmerman,* with him *Sidney A. Sanes,* for
appellant.

*Anne X. Alpern,* First Assistant City Solicitor, with
her *William B. Secrist,* City Solicitor, for appellee.

OPINION BY RHODES, J., October 5, 1936:

Mitchell J. Taskey brought suit against the city of
Pittsburgh to recover wages alleged to be due him as

a former patrolman of that city. The case was tried before SOFFEL, J., sitting without a jury, who found for the plaintiff in the full amount of his claim; and judgment was entered on the finding. The majority of the court in banc granted the motion ex parte defendant to open the judgment and for entry of judgment upon the whole record in favor of the defendant. The plaintiff appealed.

The appellant had been employed as a patrolman since August 7, 1906. Appellant's compensation, if paid without deductions, would have been $2,520 for the year 1931. On account of the financial condition of the city, due to the failure of actual receipts to equal the estimated receipts upon which appropriations for the year had been made by council, it was decided by the mayor and the heads of the departments that the employees in all departments of the city should be furloughed without pay for a period of fourteen days. The director of public safety ordered the superintendent of police to furlough the men in the police department, including appellant, for fourteen days in 1931. It was optional with the appellant whether he worked or not during this period; but he understood in any event he would not be paid for the fourteen days. The appellant chose to work, signed the payroll receipts for the fourteen days for which he was furloughed, and, although not paid for those days, acknowledged receipt of his wages in full. The appellant made no complaint or demand for payment until the present action was instituted on December 21, 1934. About December 31, 1932, appellant was placed on the retired list.

Again in 1932 the fiscal affairs of the city were such that drastic action had to be taken to meet the emergency. On December 30, 1931, the council of the city of Pittsburgh, by ordinance, provided for the reduction in the number of patrolmen for the year 1932 by

one hundred sixty-two. The pay of the appellant, by virtue of his term of service, was again fixed at $2,520 per annum. This ordinance, approved December 31, 1931, amending and supplementing an ordinance entitled, "An Ordinance fixing the number of officers and employes of all departments of the City of Pittsburgh and the rate of compensation thereof," approved January 5, 1931, also provided: "The Mayor and the heads of the several departments and officers of the City of Pittsburgh are hereby authorized, empowered and directed to prescribe furloughs without pay, from time to time, in order to restrict expenditures for salaries and wages within the amounts appropriated for such purpose, or to restrict expenditures within actual or estimated cash receipts of the City of Pittsburgh for the fiscal year; provided, further, that no compensation shall be allowed any employe for time absent from duty, except in cases of sickness vouched for by a physician's certificate, or by proper legislative act of Council." On December 31, 1931, council also passed the following resolution: "Resolved, That the Mayor and the executive officers under him are hereby empowered to use their best judgment in furloughing such employes as they deem necessary to furlough and for such reasonable time as they deem necessary in order to promptly and properly carry out the requirements of the salary and appropriation bills."

The 162 patrolmen were retained until July, 1932. Various patrolmen had been furloughed without pay during the first six months of 1932. On account of the unimproved financial condition, it was necessary to make further curtailments; and similar furloughs for all patrolmen were ordered. In pursuance thereof, patrolmen were required to lose five days' pay in July, five days' pay in August, twelve days' pay in September, twelve days' pay in October, twelve days' pay in November, and six days' pay in December, 1932. During those fifty-two days the appellant voluntarily

worked. The appellant was not required to work on the days covered by the furloughs, but such service was optional on his part. If he volunteered to work, his services were to be donated to the city. The appellant signed the payroll receipts for the months in question during 1932. The receipts acknowledged payment for services rendered during each period of that year. In addition, appellant signed a waiver of payment for services rendered during such furlough periods.

Appellant's action was brought to recover compensation for the fourteen days which he worked in 1931, and for the fifty-two days which he worked in 1932, covered by the furloughs. The appellant made no protest at any time; nor did he make any demand whatsoever until the institution of his suit in 1934, two years after he had been placed on the retired list.

Appellant was included in the civil service of the city, which was established by the Act of May 23, 1907, P. L. 206 (53 PS §9361 et seq.). Section 20 (53 PS §9383) reads as follows: "No officer, clerk, or employe, in the competitive class or in the non-competitive class of the classified civil service of any city of the second class, who shall have been appointed under the provisions of this act, or of the rules made pursuant thereto, shall be removed, discharged, or reduced in pay or position except for just cause, which shall not be religious or political. Further, no such officer, clerk, or employe shall be removed, discharged, or reduced, except as provided in section eight of this act, until he shall have been furnished with a written statement of the reasons for such action, and been allowed to give the removing officer such written answer as the person sought to be removed may desire. In every case of such removal or reduction a copy of the statement of reasons therefor, and of the written answer thereto, shall be furnished to the civil service com-

mission, and entered upon its records. Nothing in this act shall limit the power of any officer to suspend a subordinate for a reasonable period, not exceeding thirty days: Provided, however, That successive suspensions shall not be allowed, except in special cases, where reasons of public importance make it necessary, and where the permission of the commission has first been obtained and recorded upon its public records. Nothing in this act shall alter the procedure required for the removal or punishment of policemen and firemen, as provided in the act of March seventh, one thousand nine hundred and one, relating to the government of cities of the second class."

It is also provided by section 6 of the Act of 1907 (53 PS §9366) that: "The civil service commission in each city of the second class shall: ...... Prescribe, amend and enforce rules and regulations for carrying into effect provisions of this act." Section 8 of this act (53 PS §9370) also provides: "The civil service commission, in each city of the second class, shall make rules and regulations providing for examinations ...... and for appointments ...... and for such other matters as are necessary to carry out the purposes of this act."

Under section 20 of the Act of 1907 (53 PS §9383), appellant's superiors had power to suspend him for a period not exceeding thirty days without hearing and decision. It is to be distinguished from section 18 of article 19 of the Act of June 25, 1919, P. L. 581 (53 PS §3338), relating to cities of the first class.[1]

The power to suspend under section 20 (53 PS §9383) is sufficiently comprehensive to include a directed furlough without pay. The terms used are not controlling; the intention was clear; and the purpose

---

[1] See *Egan v. City of Philadelphia,* 113 Pa. Superior Ct. 93, 172 A. 183; *Conroy v. City of Philadelphia,* 319 Pa. 265, 179 A. 224; *Haslam v. Philadelphia,* 314 Pa. 225, 171 A. 563.

of the city authorities was known to the appellant. There is nothing in the act that prevented the suspension, or the furloughing without pay, of the appellant for a period not exceeding thirty days, without the permission of the civil service commission, in order that the expenditures of the city might not exceed its receipts. Successive suspensions may also be made where reasons of public importance make it necessary, providing the permission of the commission has first been obtained and recorded upon its public records. Inability of the city to meet its financial obligations is most certainly a reason of public importance, and in such case successive suspensions were permissible provided the commission first gave its approval. The suspensions or payless furloughs of the appellant, during the year 1932, together exceeded thirty days, but they were not successive.

It is apparent that the appellant acquiesced in the plan devised by the city authorities to meet the financial crisis confronting the city. He led the city authorities to believe that he proposed to cooperate in the emergency, sacrifice a portion of his pay, and contribute his services that the police department might continue to function efficiently, that the general welfare of the city might be promoted, and that his fellow patrolmen might be kept upon the payroll. His acquiescence was evidenced, not only by his failure to complain or object, but by his signing the payroll receipts for each period which included the days for which he now seeks to recover, and by signing a statement to the effect that he was contributing such services to his city during the then existing emergency. Had an objection been made or a protest been filed by the appellant, the city authorities would then have had notice of appellant's nonconcurrence, and an opportunity would have been afforded to have devised other means to meet the city's obligations with its reduced

income. Notwithstanding the acquiescence in the action of the city authorities and the acceptance of the situation by the appellant and others, the discharge of 162 fellow patrolmen was necessary. A further reduction of the personnel might have been inevitable had the department not relied on the appellant's declared cooperation. The appellant could not mislead the city to its injury by his conduct, and then hold it liable to him. See *Wagoner v. Philadelphia*, 215 Pa. 379, 64 A. 557. Cf. *Shipley v. Pittsburgh*, 321 Pa. 494, 184 A. 671.

If appellant was improperly suspended or furloughed without pay, the commission had power to restore the appellant to his previous status. The fact that appellant voluntarily worked did not change the nature or effect of the action taken. Appellant was protected by the provisions of the Act of 1907; and the civil service commission has the power to prescribe and enforce rules and regulations for carrying into effect the provisions of this act and for carrying out its purposes. It is the duty of the commission, in the first instance, to see that the provisions of the act are properly enforced. Cf. *Rush v. Philadelphia*, 62 Pa. Superior Ct. 80. If the appellant was aggrieved by the conduct of his superiors, and had no intention to cooperate with the city authorities or acquiesce in their plan to meet the pressing situation, then it was his duty to complain to the civil service commission that he had been suspended or furloughed without pay contrary to the provisions of that act. This the appellant did not do. See *Thomas v. Connell et al.*, 264 Pa. 242, 246, 107 A. 691, 692. Having taken no appeal to the civil service commission, under the civil service rules, the appellant has no standing to redress in a court of law his alleged wrong. See *Commonwealth ex rel. v. Philadelphia et al.*, 273 Pa. 332, 117 A. 180 (concurring opinion by the present Chief Justice, at page 340) ; *Mangan v. McNair, Mayor*, 321

Pa. 446, 184 A. 668. The commission had jurisdiction of his case; and it was necessary for him to have appealed to that body, and, after its disposition there, then to the courts. Any suspension in violation of section 20 of the Act of 1907 (53 PS §9383); the same as the dismissal of a typist *(Mangan v. McNair, Mayor,* supra) in violation of that section, comes within the jurisdiction of the civil service commission, and it was incumbent upon the appellant to there appeal. The appellant had a remedy but did not follow it. "Section 13 of the Act of 1806, 4 Sm. L. 326, 46 PS section 156, required [appellant] to follow the remedy prescribed by the legislature to remedy [his] grievance. '...... where a statute creates a right or liability or imposes a duty, and prescribes a particular remedy for its enforcement, such remedy is exclusive and must be strictly pursued': *Curran v. Delano,* 235 Pa. 478, 483, 84 A. 452 [453]; *Bowman v. Gum Inc. et al.,* 321 Pa. 516 [184 A. 258]": *Mangan v. McNair, Mayor,* supra, 321 Pa. 446, at page 448, 184 A. 668, at page 669.

The judgment of the court below is affirmed.