## Yontz v. Yontz

*Oscar G. Wickersham*, of *Wickersham & Wickersham*, for plaintiff.

*Carl B. Shelley* and *James W. Reynolds*, for defendant.

RICE, P. J., forty-first judicial district, specially presiding, February 26, 1941.—This is an action of trespass brought by William Yontz against John H. Yontz, his brother, to recover damages alleged to result from certain alleged acts and omissions of defendant. The case came to trial at the October term, 1940, before the undersigned, specially presiding, and a jury. At the

close of plaintiff's case, and before defendant offered any evidence, defendant made a motion for a compulsory nonsuit on the ground that "plaintiff has produced no such evidence as in law is sufficient to maintain his action", and the court granted the motion and directed a nonsuit. Plaintiff duly moved to take off the nonsuit, averring that the court erred: (1) In entering the nonsuit; (2) in refusing to admit in evidence certain exhibits offered in evidence; and (3) in holding that plaintiff was without right to recover in this action. Plaintiff's motion was argued on January 8, 1941, before the court in banc, including the trial judge.

The first and third reasons in support of the motion now before the court are substantially the same, as the granting of the nonsuit was tantamount to saying that plaintiff, on the evidence produced, had no cause of action, and they will be considered together. The second reason will be considered later.

The first and second paragraphs of the statement of claim merely state the names and the places of residence of the parties; the third avers that plaintiff is the residuary legatee in the will of Isabella Yontz, deceased, and defendant is the executor thereof and that a copy of the said will is attached to the statement; the fourth avers the date of death of Isabella Yontz; and the fifth avers that the said will was duly probated in Dauphin County and states the place of record thereof.

The sixth paragraph of the statement is as follows: "That on the 7th day of January, 1934, the original of the said last will and testament, immediately following the funeral of the said Isabella Yontz, was delivered to defendant and executor therein, for the purpose of probate and administration of the estate of the said Isabella Yontz." The only evidence respecting the delivery of the will to defendant was given by plaintiff and defendant, the latter of whom was called for cross-examination. Plaintiff testified he delivered the will to defendant the night of January 5, 1934, and defendant

testified that he received it the day before the funeral. As the testimony shows that Isabella Yontz died January 5, 1934, there is a slight discrepancy between the testimony of these two, unless decedent was buried the next day after she died, but the exact date is not material. Neither plaintiff nor defendant testified to any conversation between them as to the purpose of the delivery of the will to defendant. If the purpose of plaintiff was that defendant should proceed to have the will probated and take out letters testamentary, there is no testimony that he said anything to defendant to indicate that purpose. It may be that executors generally do go ahead and have wills probated in which they are appointed, but in the absence of any understanding or agreement executors are not required to do anything more than what the law obliges them to do, and the question is, what was the legal duty of defendant when he received the will.

The seventh paragraph of the statement of claim is as follows:

"That the said defendant, for a period of eighteen months and upwards, after said will was delivered to him, the said defendant, as the executor of the estate of the said Isabella Yontz, failed to offer said last will and testament for probate in the office of the Register of Wills of Dauphin County, although the subscribing witnesses thereto were at all times available for the purpose of probating said last will and testament, and although frequently requested by the plaintiff, through his counsel, to probate same according to law."

The testimony shows that Isabella Yontz, the mother of the parties hereto, died January 5, 1934, having made: (1) A last will and testament, in which she expressed a desire that her real and personal property be sold and, after the payment of her funeral expenses, bequeathed $5 to each of seven of her children, naming them and including defendant, and the residue of the estate to plaintiff; and (2) a codicil thereto, in which

she appointed defendant as the executor of her said will. Both writings were executed by her by her marks in the presence of two subscribing witnesses and were duly probated in the office of the Register of Wills of Dauphin County on June 4, 1936. The testimony does not show the date when the will was deposited in the office of the register of wills, but it does show that it was deposited between December 24, 1934, when the petition for a citation was filed, and March 13, 1935, when the citation was discharged because, in the meantime, the will had been lodged. For the purpose of this motion, we will assume that the subscribing witnesses were available. There is no testimony that either plaintiff or his counsel requested defendant to have the will probated.

Counsel for plaintiff contends that plaintiff has a common-law remedy, an action of trespass, to recover damages resulting to plaintiff from the failure of defendant to probate the will of their mother, for the reason that for every wrong there is a remedy. The action of trespass is a common-law remedy in origin, and it lies to recover damages for the breach of a purely statutory duty, unless the statute creating the duty also provides the remedy for the breach thereof. But the form of the remedy and the right of action are two different legal concepts. The first is the procedure in some court by which the second is attempted to be enforced. It is necessary to show, first, that defendant committed a tort and, second, that an action of trespass lies to enforce the liability for such tort, if there be one, and if there be any injury from such tort.

"The test to determine whether there is liability in an action of tort is in answer to the question whether the defendant by an act or omission injured another by disregarding a duty imposed by law in respect to that other": Ebbert et al. v. Philadelphia Electric Co., 330 Pa. 257, 269.

"Tort liability must be founded upon some blameworthy conduct, or lack of due care resulting in the

violation of a duty owing to others": Summit Hotel Co. v. National Broadcasting Co., 336 Pa. 182, 187.

In any action based on negligence, there must be evidence to show that defendant failed to perform some legal duty: McCauley et al. v. Logan, 152 Pa. 202; Bardis v. Philadelphia & Reading Ry., 267 Pa. 352; Fitzpatrick v. Penfield, 267 Pa. 564; Bisson v. John B. Kelly, Inc., 314 Pa. 99; Zayc, Admr., v. John Hancock Mutual Life Insurance Company of Boston, 338 Pa. 426.

If plaintiff has a cause of action by reason of the failure of defendant to probate the will of their mother, the delivery of the will to defendant must have created a legal duty on the part of defendant to probate it. If there was any agreement or understanding, express or implied, between the parties for the probate of the will, then the duty was a contractual duty, and the remedy of plaintiff would be an action of assumpsit, not an action of trespass. To maintain the latter the duty would have to be a duty created by the law. If there was any duty on defendant's part by reason of the delivery of the will to him, it cannot be held to have been more than a duty to exercise ordinary care to keep the will safely. If one person deliver to another an unrecorded deed to property of the former, without any words or acts stating, or from which may be implied, the object or purpose of such delivery, is the person receiving the deed under any duty to have the deed recorded, or is his duty merely to exercise ordinary care to keep the deed safely? To hold that the person receiving such deed is under a greater duty than merely to keep safely is to subject him to risks and liabilities which an ordinarily prudent person would not anticipate and should not be obliged to anticipate. When plaintiff had possession of the will, he was its legal custodian and could have been cited to deposit it with the register of wills, and he had the right to do so and have a subpœna served on the subscribing witnesses to appear before the register, and when plaintiff handed the will over to defendant, de-

fendant became its legal custodian, with the same right to deposit the will and have it proved by the subscribing witnesses. But the words "right" and "duty" are not synonymous or interchangeable. There is a statute requiring the custodian of a will to deposit it for probate when cited to do so, but there is no statute requiring the executor of a will to take the necessary steps to have it proved before the register of wills. In Maginn's Estate, 278 Pa. 89, 98, it was said:

"While the practice of allowing the owner of property to dispose of it after death is of very ancient origin (Genesis 48: 22), it did not exist in certain nations (4 Kent 502), and, in England, until a more recent period, was exercised under considerable restriction: 2 Blackstone's Com. 492. It is not a constitutional or natural right, but a creature of statute law, and as such it must be governed: Kirkpatrick's Estate, 275 Pa. 271; Frick's Estate, 277 Pa. 242. The state prescribes a form within which a testator's acts may be reasonably safe, but it must be followed."

"The right to transmit or to receive property by will or through intestacy is not a natural right but a creature of statutory grant": Tack's Estate, 325 Pa. 545, 548.

A will contest is not a common-law action: Noble's Estate, 338 Pa. 490. The requisites of a will and its execution, the proceedings to compel its deposit with the register of wills, the proof of its execution and its recording, and all proceedings to test its validity are statutory. It has been ruled that an executor of a will is under no legal duty to defend it in a contest proceeding and that, if he does defend it, he acts, not under any legal duty as executor, but as agent of the persons interested in sustaining it: Arnold's Estate, 252 Pa. 298; Mead v. Sherwin et al., 275 Pa. 146; Lowe's Estate, 326 Pa. 375. If an executor is under no legal duty to defend a will, for equally good reasons he is under no legal duty to propound it. In either case he makes himself liable for costs and expenses, which he cannot re-

cover from decedent's estate, and must vouch for the validity of the will. This latter he may not be able to do, because he may have reason to believe that the will is a forgery or was procured by fraud or undue influence or that testator was mentally incompetent to make a will. In the pending case, defendant testified that he believed his mother was not competent to make a will. Was he obliged to probate a will he believed to be invalid?

"In the absence of statute the law does not cast upon the person nominated executor in a will the legal duty of procuring its probate, although at the instance of parties interested he may be summoned to produce the will, and either prove it and take upon himself its execution, or else renounce it": 28 R. C. L. 360, sec. 361.

We are fully convinced that there was no duty resting upon defendant, either at common law or by virtue of any Pennsylvania statute, to have the will of his mother probated.

As we have heretofore stated, defendant, when he had custody of the will, could have been cited to deposit it with the register of wills for probate. This is provided by section 8 of the Register of Wills Act of June 7, 1917, P. L. 415, which reads as follows:

"The register, having jurisdiction as aforesaid, shall, at the instance of any person interested, issue a citation to any person having the possession or control of a testamentary writing alleged to be the last will and testament of a decedent, requiring him to produce and deposit the same in his office for probate; and if such person shall conceal or withhold such writing, during the space of fifteen days after being personally served with a citation issued in the manner aforesaid, it shall be the duty of the register forthwith to certify the record of the proceeding to the orphans' court of said county; and the said court, upon petition of any person interested, shall proceed to enforce obedience to said citation by attachment, as in cases of citations issued from said court."

This act repealed section 7 of the Act of March 15, 1832, P. L. 135, which provided for the issuance of a citation in the same language as the Act of 1917, but which, instead of an attachment, gave other remedies as follows:

". . . and if such person shall conceal or withhold such writing, during the space of fifteen days, after being personally served with a citation, issued in the manner and form aforesaid, he shall be liable to an indictment as for a misdemeanor, or to an action for damages by the person aggrieved."

In Nichols' Estate, 3 Pa. Superior Ct. 484, 487, which was a proceeding under the Act of 1832, Judge Wickham said:

"It became the duty of these parties to 'produce and deposit the same for probate' within fifteen days after service of the citation, if they had the will in their possession or control."

Under these statutes it becomes the duty of the custodian of a will, within 15 days after service of a citation, to produce the will for probate, but there is no duty on such custodian or the executor, under these statutes, to probate the will, and this duty to deposit does not come into being until the service of a citation to produce. Under the Act of 1832, which gave an action for damages, the right of action did not begin until the lapse of 15 days from the service of the citation, and any damages accruing prior to the 15-day period or after the deposit of the will could not be recoved in the action, and the conclusion must be that an action for damages under the Act of 1832 had a very limited scope, especially in the matter of damages, as compared with any supposed common-law action for damages, and must be held to be a different remedy and to take the place of the supposed common-law remedy, though both were called actions of trespass for damages. The grant of an action for damages by the Act of 1832 affords a persuasive argument that such right of action

did not exist prior to the Act of 1832, but if there was any remedy under the common law prior to the Act of 1832 it was abolished by the Act of 1832 by reason of the Act of March 21, 1806, 4 Sm. L. 326, sec. XIII, which provides:

"That in all cases where a remedy is provided or duty enjoined, or any thing directed to be done by any act or acts of Assembly of this commonwealth, the directions of the said acts, shall be strictly pursued, and no penalty shall be inflicted or any thing done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such act or acts into effect," and any right of action would be by virtue of the Act of 1832. See Taylor v. Moore, 303 Pa. 469, White et al. v. Old York Road Country Club et al., 318 Pa. 346, Bowman v. Gum, Inc., et al., 321 Pa. 516, Ermine v. Frankel et al., 322 Pa. 70, and Taskey v. Pittsburgh, 123 Pa. Superior Ct. 573.

The repeal of the Act of 1832 by the Act of 1917 in turn abolished the remedies of the Act of 1832, to wit, an indictment and an action for damages, without reviving any common-law remedy, since the Act of 1917 reënacts the portion of the Act of 1832 relating to the issue of a citation and substitutes an attachment for an indictment and an action for damages. The adequacy of an attachment for disobedience to the citation cannot be questioned because, the duty to deposit a will being purely statutory, it was exclusively for the legislature to prescribe the remedy or punishment for a disobedience of that duty: Commonwealth v. Evans, 13 S. & R. 426; Mack v. Wright et al., 180 Pa. 472; Westervelt v. Dives, 231 Pa. 548; Curran v. Delano, 235 Pa. 478; Danner v. Wells, 248 Pa. 105; Ruggles et al. v. Moore et al., 97 Pa. Superior Ct. 47. Aside from this rule, an attachment may result in imprisonment and is more likely to secure obedience to the citation than an indictment or an action for damages. All this relates to the deposit of a will for probate, but if there is no right

of action for damages for failure to deposit a will we conclude, from another approach to the question, since there is no statutory duty to probate a will, that there is no right of action for damages for failure to probate a will.

In any negligence case, and it must be remembered that this is one, it is not sufficient to prove a duty and neglect to perform it; to recover plaintiff must also show that he suffered an injury by reason of defendant's failure to perform such duty.

"No matter how great the negligence of the defendant, nor where it began or continued, there was no cause of action to anybody until an injury was received": Hoodmacher v. Lehigh Valley R. R. Co., 218 Pa. 21, 23.

"To constitute a tort there must be an injury; mere negligence establishes no right of action": Mike et al. v. Lian, 322 Pa. 353, 356, quoted in Openbrier et al. v. General Mills, Inc., 340 Pa. 167, 169.

"In addition to the elements of tort heretofore discussed, a third element requisite thereto is damage resulting from the breach of duty and invasion of right. Mere imaginary or speculative grievances, without tangible injury to any legal right, afford no ground for judicial action": 62 C. J. 1107, §24.

In order to determine whether he did suffer any injuries from the nonperformance by defendant of a supposed duty, we shall now examine the remaining allegations of his statement of claim and the evidence produced by him.

Plaintiff alleges, in the eighth, ninth, and tenth paragraphs of his statement of claim, that certain litigation resulted from the neglect of defendant to probate the will and that plaintiff was compelled to expend certain moneys in prosecuting and defending certain legal proceedings. These proceedings were: (1) An action in the Court of Common Pleas of Dauphin County, entered to no. 699, March term, 1936, by plaintiff against the register of wills of said county to compel the latter

to probate the will of Isabella Yontz; (2) an action of assumpsit in the said court, entered to no. 976, September term, 1934, by Helen Yontz Belehas (a daughter of Isabella Yontz) against Newton R. Yontz, administrator of the estate of Isabella Yontz, deceased, to recover the sum of $1,440, in which action plaintiff, by leave of court, intervened as a party defendant, he being the residuary legatee under the said decedent's said will; (3) a citation issued by the register of wills of the said county at the instance of plaintiff against defendant to compel the latter to deposit the said will for probate. It is further averred that these proceedings were caused or made necessary by the acts or omissions of defendant and that plaintiff suffered certain losses thereby, namely: (a) The sum of $250 paid to Wickersham & Wickersham for their professional services to plaintiff in the matter of the said mandamus proceeding; (b) the sum of $218.85 paid to Helen Yontz Belehas in compromise settlement of the said action of assumpsit, and the sum of $250 paid to Wickersham & Wickersham, attorneys of the legal representative of the said estate and the said intervening defendant, for their professional services in the said action of Helen Yontz Belehas; (c) the sum of $250 paid to Wickersham & Wickersham for their professional services to plaintiff in the matter of the said citation to produce the said will. It should be noted that there is no testimony to show that one cent of the above sums set forth in items (a), (b), and (c) was paid out by plaintiff; on the other hand, the testimony clearly shows that all of the said sums mentioned in items (a), (b), and (c) were paid by Alfred V. Jennings, one of the administrators c. t. a of the said decedent, as shown by his account, which was duly filed in, and confirmed by, the orphans' court of the said county. Plaintiff claims the right to recover these items because he is the residuary legatee under the said will and that the payment of them by the administrator is the equivalent of pay-

ment by him, but we cannot see it that way. If there is any right to reimbursement from this defendant of the said sums paid out, such right can be enforced only by the legal representative of the said decedent, not by plaintiff. The mere fact that plaintiff would ultimately be entitled to the residue of the estate after the debts and prior legacies are paid does not give him a right to sue. There was no evidence that all the debts and all of the legacies of $5 to each of the other seven children of decedent were paid, and even if there had been such evidence plaintiff could not sue to be reimbursed because an action of tort, before verdict, is not the subject of assignment: Sensenig v. Pennsylvania R. R. Co., 229 Pa. 168; Beck v. Germantown Cricket Club, 45 Pa. Superior Ct. 358; Manganiello et al.v. Lewis,122 Pa. Superior Ct. 435; Tugboat Indian Co. v. A/S Ivarans Rederi et al., 334 Pa. 15; and, because the right of subrogation would not exist if an assignment could not be made. Also there is no testimony to show that defendant was, in any way, a party to either the said mandamus action or the said action of Helen Yontz Belehas, or concerned in them, or responsible for them, or to show even the slightest conspiracy between defendant and any other person, known or unknown, to hinder or delay the deposit or probate of the said will, or to procure the bringing of the said action of assumpsit, or to show that the claim of Helen Yontz Belehas was in any respect false or fraudulent. The testimony shows that the said action of assumpsit was settled by a verdict for $200 by consent and that plaintiff, an intervening defendant therein, agreed to such verdict, and this verdict is sufficient to satisfy the court that this claim had merit. As to the citation against defendant to deposit the will for probate, both plaintiff and defendant were parties to it, defendant had a legal right to interpose any defense he believed he had under the law, and defendant is not liable in any way to pay the counsel fees of plaintiff's attorneys in such proceed-

ings: Hempstead et al. v. Meadville Theological School, 286 Pa. 493. Besides, the testimony shows that the court made an order discharging the citation because the will had, in the meantime, been lodged with the register of wills, and plaintiff cannot be held to have been the successful litigant from a strictly legal point of view. From this consideration we are of the opinion that plaintiff did not suffer any injuries at the hands of defendant by reason of any averments in the eighth, ninth, and tenth paragraphs of the statement of claim and any testimony pertinent thereto. . . .

We have gone into this matter at considerable length because counsel for the parties did not cite any cases ruling on the supposed duty of an executor of a will to have it probated and the court, after considerable search, could not find any and it became necessary to consider rules of law relating to wills and legal representatives that would point the way toward an answer to the question. And it became necessary to consider in detail the several alleged items of damage in order to determine whether, assuming that there is a legal duty on an executor to probate a will, plaintiff had suffered any injuries and was entitled to recover anything on the evidence. The statement of claim contains some averments of fact that are not supported by the evidence and some legal conclusions that are not correct. In considering the testimony, we have followed the rules applicable to a motion to take off a nonsuit and have assumed the truthfulness of the testimony and given plaintiff the benefit of every proper inference of fact. And our conclusion is that the entry of the nonsuit was entirely proper.

### Decree

And now, February 26, 1941, the motion of plaintiff to take off the nonsuit is refused.